## BURNS *v.* MULTNOMAH R. CO.

*(Circuit Court, D. Oregon. February 23, 1883.)*

1. **COUNTY ROAD—JURISDICTION TO ESTABLISH.**

   The county court has no jurisdiction of an application to establish a county road, except upon the petition of 12 householders of the vicinage, and notice to the persons concerned, as prescribed in sections 2 and 3 of the road law. Oregon Laws, 721.

2. **SAME—ORDER ESTABLISHING.**

   An order establishing a county road must direct the survey thereof to be recorded; and where the order provided that the survey should be recorded when the petitioners gave a bond to open a portion of the proposed road, which was never done, and the record never made, the road was not established.

3. **LEGISLATURE—POWER OF, TO LEGALIZE ACTS OF COUNTY COURT.**

   The legislature may legalize the act of a county court in establishing a road without a legal petition, but not without notice to the persons concerned.

4. **TAKING PRIVATE PROPERTY FOR PUBLIC USES.**

   The legislature being prohibited (Or. Const. art. 1, § 18) from taking private property for public use without just compensation therefor, it is necessarily implied thereby that the owner of the property so taken shall have notice of the proceeding for appropriation, and an opportunity to be heard thereon.

5. **FOURTEENTH AMENDMENT—DUE PROCESS OF LAW.**

   Under the fourteenth amendment a state cannot appropriate private property for any purpose without due process of law, which includes notice of the proceeding and a prescribed opportunity to be heard upon the question involved.

6. **GRANT OF THE USE OF A STREET TO A RAILWAY COMPANY.**

   A grant by a county court, under section 26 of the corporation act, (Or Laws, 530,) of the use of a street to a railway corporation for the purpose of constructing and operating a railway thereon, is a grant of a franchise, and the order or agreement making the same must be construed most strongly against the corporation and in favor of the public, so that nothing shall pass thereby but what clearly appears to have been intended.

7. **SAME—CASE IN JUDGMENT.**

   Where the agreement authorized a corporation proposing to construct a railway from Albina to Vancouver, to lay its track through the former place upon certain streets therein, "beginning at the ferry landing at the foot of Mitchel street," and it appearing that said ferry landing and Mitchel street were different and not contiguous places, *held*, that the ambiguity must be resolved against the corporation, and the agreement construed as if it read, simply, "at the foot of Mitchel street."

8. **APPROPRIATION OF STREET OR HIGHWAY BY RAILWAY.**

   A railway corporation cannot be authorized under section 26 of the corporation act aforesaid to appropriate a public street or road to its use, unless such road or street has been legally established according to some mode prescribed by statute.

Suit for an Injunction.

*George H. Williams, H. Todd Bingham,* and *E. W. Bingham,* for plaintiff.

*C. B. Bellinger,* for defendant generally; and *Joseph N. Dolph,* as to the right of the county court to appropriate a public road or street for the use of a railway without compensation to the owners of the adjacent property.

DEADY, J. The plaintiff brings this suit to restrain the defendant from obstructing the way to and from the east side of the Wallamet river, at the southern end of river block 19, in the town of Albina, and just north of East Portland. On filing the bill, on January 8, 1883, an order was made that the defendant show cause why a provisional injunction should not issue, and that the defendant be restrained in the mean time, as prayed in the bill. The application for a provisional injunction was heard on the bill and answer, and sundry affidavits and exhibits. From these it appears that the plaintiff is a British subject, and the defendant a corporation organized under the laws of Oregon since May 11, 1882, for the purpose, "in part," of constructing and operating a street railway from or near East Portland or Albina to the Columbia river, opposite the town of Vancouver, Washington territory.

On May 28, 1873, George H. Williams, W. W. Page, and Edwin Russell were the owners as tenants in common of the tract of land on the east side of the river, including the premises now claimed by the plaintiff, upon which they then laid out the town of Albina, and duly platted and recorded the same—the said Russell being then the owner of an undivided one-half of said land.

A street called River street, being 60 feet wide and running from the northern limit of East Portland, northerly, along and parallel with the river and about 180 feet distant therefrom, was duly designated on said plat; and the land between said street and the river, below the ferry landing, was divided thereon into blocks called "River Blocks"—the most southerly one being designated and numbered as "Block 19." But that portion of the tract lying to the southward of block 19, and to the westward of River street, containing about one and a half acres, was not laid off into lots or blocks.

A street called Mitchel street was also designated upon said plat as commencing at and running easterly from River street—its width being 60 feet, and the center line thereof about 80 feet distant to the northward from the southerly side of block 19.

On August 4, 1875, a strip of land about 60 feet in width and adjoining block 19 on the southward, and extending from the water line easterly to River street, was used by the public, with the consent of the proprietors, as a way to and from the ferry which plied between

Albina and North Portland; and on that day Edwin Russell and others, but who or how many others does not appear, petitioned the county court of Multnomah county "to open a county road leading from the ferry landing in the town-site of Albina" in a north-westerly direction along the line of the new graded road to the Vancouver road; thence northerly along the said Vancouver road to the north line of section 27, of township 1 N., of range 1 E.;" thence by course and distance along and through said section 27 and sections 23 and 24 of the same township; and "thence northerly and easterly, following, wherever practicable, what is known as the Payne road, to the Slough road;" whereupon the county court made an order appointing viewers and a surveyor "to view and survey said proposed road."

On September 4, 1875, said viewers filed their report, together with the notes of the survey, reciting therein that they had been appointed "to view and locate a proposed county road, beginning at the ferry landing in Albina and running northerly and easterly to the Slough road, near the residence of Benjamin Sunderland," and recommended "that the prayers of the petitioners be granted, on condition that they shall open that portion of the line between the middle of sections 23 and 24" aforesaid "at their own expense."

On September 13th the county court made an order adopting said report, and declaring " that the proposed road be and the same is hereby declared to be a county road, according to the survey notes thereof on file in this court, upon the condition that the petitioners for the same shall file in this court a bond, to be approved by the court, in the sum of $500; said bond conditioned that said petitioners will open that portion of said road lying between the middle of sections 23 and 24, township 1 N., range 1 E., at their own expense; and that, upon the petitioners complying with the foregoing condition said notes of survey be recorded at length in the record of road surveys, and that said road be declared to be a county road, and that the supervisor of the road district do open and work said road as other roads in his district."

These facts concerning the application for and the view and survey of this proposed road are shown by a certified copy of the entries in the records of the county court; but the petition itself is not found. A paper purporting to be a notice of the application, dated July 6, 1875, is found among the files of the court, with an affidavit of S. S. Douglas indorsed thereon, showing that it was duly posted; but it is not signed by any one, nor does it indicate in any way at whose instance it was posted. Nor does it appear that the petition-

ers ever gave the bond or opened the road, as required by the order of court, or that the said "notes of survey" were ever recorded in the "record of road surveys," as provided thereby.

In the year 1879, J. B. Montgomery became the owner of the undivided interests of George H. Williams and W. W. Page in said tract of land, and prior to January 5, 1883, he became the owner of the whole interest therein, at which date he sold and conveyed to the plaintiff, for the consideration of $16,000, a portion of the premises, about 80 feet wide, lying on the southerly side of block 19 and adjacent thereto, and extending from the water line to River street, together with the vendor's interest in the 80 feet of said street adjacent to the premises, and in the tide and overflowed lands in front thereof; reserving a ferry landing thereon for the ferry licensed by the county court to the vendor and Wilson on the ——— January, 1883, with "egress to and from said landing across the said premises."

On October 5 and December 6, 1882, the county court, upon the application of the defendant, ordered and agreed with it to the effect that it might construct and operate a railway, propelled by steam or horse power, for the transportation of passengers through the town of Albina—"beginning at the ferry landing at the foot of Mitchel street; thence along said street to Loring street;" and thence along sundry named streets and the county road leading to St. John to a "gulch" nearly east of the "coal bunkers," below Albina—upon the conditions following.

(1) The use of steam is confined to dummy engines, such as are commonly in use in eastern cities; (2) the cars are not to be run through Albina faster than six miles an hour; (3) the track is to conform to the grade of the streets of Albina as they are, or may be, provided such grades are practicable.

In the answer of the defendant it is alleged that it has already expended "about $40,000 in making preparations for the construction" of its road, but it does not appear that anything has been done on the ground, towards such construction, but the erection of a trestle-work upon the land conveyed to the plaintiff for the apparent purpose of laying a track thereon as a standing or starting place for the cars, in connection with a waiting-house or station to be constructed at the easterly end and southerly side of the same. This trestle-work is constructed three feet above the grade or ground at the upper or easterly end, and nine and a half feet at the lower or westerly end. It is 60 feet long and five feet in width across the stringers, and eight feet across the caps of the bents. The center of it is 40 feet

from and parallel with the southerly side of block 19, and the upper end is within 20 feet of the westerly side of River street, while the lower end is 100 feet from the water line; and it is understood that the upper end is to be extended to River street, and a waiting-house erected on the southerly side of this 20 feet, and a platform constructed at the lower end with a stairway leading therefrom to the ground, with a view of facilitating the egress of passengers to and from the present ferry landing.

The plaintiff rests his right to the relief sought upon the following grounds:

(1) There is no county road between the ferry landing and River street, because the county court did not acquire jurisdiction to establish one there, for the reasons: (*a*) The notice of the application was anonymous—not signed by any one; (*b*) the petition was not signed by 12 householders of the vicinage, as required by statute. (2) The order actually made by the court was a conditional one, to take effect when the petitioners gave a bond to open a portion of it, which was not done. (3) The notes of the survey were never recorded and therefore the road was not established, even if the court had jurisdiction. (4) Said notes were not recorded, because the court in effect directed that it should not be done until the petitioners filed the bond as required. (5) If there is a legal road between the ferry landing and River street, the defendant is not authorized to occupy or use either, because its license from the county to use the streets of Albina, in legal contemplation, begins at the foot or westerly end of Mitchel street, on the easterly side of River street, and not at the ferry landing. (6) And if the license to defendant authorized it to begin its track at the ferry landing, it is not thereby authorized to occupy or use the road or street with a trestle-work and waiting-house, which not only obstruct the use of them as public highways, but shut off any access to them from the plaintiff's adjoining property. And (7) the county court could not authorize the defendant to appropriate any portion of a public road or street to its use for the purpose of a railway track without first making compensation to the adjacent property holders, including the plaintiff, for the additional burden imposed on such road or street.

The defendant substantially admits that the proceedings had in the county court on the petitions of Edwin Russell, concerning this road, were void, for the want of a legal notice and petition, but maintains its right to the use of the same, notwithstanding, for the reasons following:

(1) There was a dedication of the way to the public use by the proprietors of the property before the application to the county court to establish a road there; (2) Edwin Russell, under whom the plaintiff claims, having instituted the proceeding in the county court for the establishment of this road, is estopped to deny its validity, and therefore the plaintiff is so estopped also; (3) that by the proviso to section 4 of the road law, (Or. Laws, 721,) as amended

by the act of October 24, 1882, (Sess. Laws, 60,) which reads, "that all roads viewed, surveyed, and recorded by order of any county court of this state subsequent to October 29, 1870, and the said road has not been defeated by remonstrance, as now provided by law, or has not been made or declared vacant by existing laws, shall be and the same are hereby" declared public highways,—said road is established as a public highway according to the survey thereof; (4) that by section 26 of the corporation act (Or. Laws, 530) the county court was authorized to agree with the defendant for the use of any public road or street in the county, and not within the limits of any municipal corporation, whereon to locate and construct its railway, and that in pursuance thereof it did authorize the defendant, by the order and agreement above mentioned, to use the road leading from the ferry landing to River street, and said street from there to the foot of Mitchel street, for said purpose; and (5) that the establishment or dedication of a road or street as a common highway, either by public authority or the act of the owner of the property, is, since the passage of the corporation act aforesaid, October 11, 1862, impliedly made subject to the power of the county court under section 26 thereof, aforesaid, to impose upon such road or street a further public use by authorizing the location and operation of a railway thereon, without any compensation therefor being made to the owners of the adjacent property.

The plaintiff, replying to the proposition of the defendant that by the healing operation of the proviso to section 4 of the road law, as above quoted, this way has become a valid county road, says.

(1) This proviso is void, because the subject of it is not expressed in the title of the act in which it is contained, as required by section 20 of article 4 of the constitution of the state; (2) it is not applicable on its face to roads which have been "declared vacated" or void "by existing laws," as this one had in effect then been by the decision of the supreme court of the state in *Minard* v. *Douglas Co.* 9 Or. 206; (3) the proviso as claimed by the defendant is an exercise of judicial power by the legislature contrary to section 1 of article 3 of the constitution of the state, and therefore void; and (4) it is also void because thereby the state undertakes to deprive persons of their property without due process of law, contrary to section 1 of article 14 of the national constitution, which, among other things, provides: "Nor shall any state deprive any person of life, liberty, or property without due process of law."

Having thus stated the case and the grounds of the contention between the parties at some length, as developed on the argument, I will briefly consider the same so far as may be necessary to dispose of the motion for a provisional injunction.

And, *first*, the proviso in the act of 1882 cannot have the effect to validate or legalize the road in question. A road "viewed, surveyed, and recorded" by the order of a county court, without the petition of 12 householders, and due notice of the application to persons interested therein and to be affected thereby,—in other words, upon its

own motion,—is void and illegal. This is plain upon both reason and authority. See *Minard* v. *Douglas Co.* 9 Or. 206.

Can the legislature make it legal by declaring it to be so, notwithstanding? Clearly not, unless it had the power to have established it in that manner in the first place. It may be admitted that the legislature can authorize or provide for the establishment of a highway without a petition from any one, and therefore it may legalize one which has been otherwise duly established by the county court.

But the legislature cannot take private property for public use without "just compensation." Article 1, § 18, Or. Const. And how can it ascertain or make such compensation unless the owner of the property has reasonable notice of the proceeding and an opportunity to be heard upon the question? It is true that when the property is taken by the state, as in this case, the constitution does not require the compensation to be "assessed and tendered" before the property is taken. But, even in that case, the law which provides for the taking must also provide for the assessment and payment of the compensation at some time in the proceeding, and unless this can be done *ex parte*, which I very much doubt, the legislature cannot authorize the appropriation of private property to public uses without notice to the owner, and therefore cannot legalize a proceeding for that purpose when it has been had without such notice. But under the fourteenth amendment it is too plain for argument that the state cannot, by the agency of either its legislative or judicial department, take the property of any person, for the establishment of a highway or other purpose, "without due process of law." And this, it is generally agreed, includes at least legal notice of the proceeding and a prescribed opportunity to be heard upon the question involved therein. *The Railway Tax Cases*, 13 FED. REP., FIELD, J., 748, SAWYER, J., 762; *Stuart* v. *Palmer*, 74 N. Y. 183; *Davidson* v. *New Orleans*, 96 U. S. 99.

This provision of the common constitution of the country was intended, as was said by this court, (*In re Ah Lee*, 6 Sawy. 414,*) as a "bulwark against local tyranny and oppression;" and under its protecting operation, this proviso, as to any road which has been "viewed, surveyed, and recorded" by the order of any county court, without notice to the owner of the property appropriated therefor, is simply void. But, even if this proviso were valid, this road is not within its purview. It was never recorded by order of the county court, or at

*S. C. 5 FED. REP. 899.

all. In fact, its record was postponed by order of the county court until the petitioners should give bond for the opening of a portion of the proposed road, which it seems they never did. And, further, by the very terms of section 5 of the road law, (Or. Laws, 723,) until the report of the viewers, the survey, and plat of the surveyor were recorded by the order of the county court, a proposed road is not considered established as a public highway. Neither was Edwin Russell estopped by his petition for the establishment of this road to deny its legality, or that it ever was established. It is not claimed that any one else was estopped by the proceeding. Certainly the public were not, including his co-tenants, George H. Williams and W. W. Page. Estoppels, to be effectual, must be mutual.

But, so far as appears, Russell declined to accept the road upon the terms proposed in the order of the court, and therefore, it may be, so the matter fell through. Nor is the plaintiff estopped for this reason if Russell is, for he does not appear to claim under Russell for more than an undivided one-half of his property, and he may assert any right pertaining to his ownership of the other half as if that was the whole of his interest. Neither does the evidence show a dedication of the road by the proprietors to the public as a highway. So far as appears, it is not shown or designated on the town plat as a way of any kind; and there is no other evidence of dedication worth mentioning or considering. It is admitted that there has been a user of the premises as a way for seven or eight years with the knowledge and consent of the proprietors. But that is not sufficient to establish an adverse right in the public as against the owner. To have this effect, the use must have the duration and character necessary to establish the bar of the statute of limitations against an action for the possession. It must have been adverse under a claim of right.

The agreement between the defendant and the county court for the use of certain streets in Albina is uncertain and ambiguous as to the point or place where the former is authorized to commence the laying of its track. So far as Albina is concerned, the petition is spoken of in the order as an application for the use of "streets," and the road or way between the ferry landing and River street is not mentioned directly or indirectly. The license is to lay a railway track and "to operate thereon a railway" "through the town of Albina," "beginning at the ferry landing at the foot of Mitchel street." But there is no "ferry landing" at the foot of Mitchel street. The "ferry landing" and "the foot of Mitchel street" are different

places.   Neither are they contiguous; and there is no mention of or reference in the agreement to River street, which must be used for about 100 feet to connect the upper end of the ferry landing or road with the foot of Mitchel street.   The first call may well include the land from low to high water mark, opposite the landing, and this it is understood will carry it up to River street and beyond.   The second one is a more limited and definite point, though there is probably a well-grounded contention as to whether the "foot"—the end—of Mitchel street is at the easterly or westerly line of River street.   This agreement is the grant of a franchise or special privilege by the public to the defendant, and must be construed most strongly against it.   Any material doubt or ambiguity in it must be resolved in favor of the public.

In *Stourbridge Canal* v. *Wheeley*, 2 Barn. & Adol. 793, the court of king's bench say:

> "The canal having been made under an act of parliament, the rights of the plaintiff are derived entirely from that act.   This, like many other cases, is a bargain between a company of adventurers and the public, the terms of which are expressed in the statute; and the rule of construction in all such cases is now fully established to be this: That any ambiguity in the terms of the contract must operate against the adventurers and in favor of the public, and the plaintiffs can claim nothing that is not clearly given them by the act."

In the *Charles River Bridge Case*, 11 Pet. 544, this language was cited by Mr. Chief Justice TANEY with approbation, and the rule of construction contained therein applied by the court to the case under consideration.

As the agreement is so ambiguous if not contradictory as to the place of beginning, it must stand, if at all, as a license for the lesser privilege and more particular designation rather than the greater and more general one—as if it read, "Beginning at the ferry landing, to-wit, at the foot of Mitchel street."   And this, I think, was what the court contemplated in making the grant; for it is not reasonable to suppose that in granting a request to lay a track through the "streets" of Albina in the construction of a railway from that place easterly to Vancouver, that the court ever thought of authorizing a track to be laid upon the "road" leading down from River street westerly to the river.   Neither do I think that the license of the defendant authorizes it to construct such trestle-work as this, or platforms for the use of cars or waiting-houses for the convenience of passengers, on any road or street.   It it wants property for any such exclusive use or purpose as that, it must obtain it elsewhere than on

a public road or street, and by purchase from those to whom it belongs. Its license is to lay a track on the grade of the streets as they are or may be, so that it will not materially interfere with their use for the purposes of ordinary travel. The erection of a warehouse or a roundhouse upon this ground would not more materially interfere with this use than the trestle-work and waiting-house which the defendant is engaged in constructing.

Upon this view of the matter a provisional injunction must issue. Therefore it is.unnecessary to decide whether the defendant can be authorized by the county court to appropriate a public road or street for the construction and operation of a railway without compensation to the owners of the adjacent property for the new and additional burden thus imposed on the land.

The question has been thoroughly argued by counsel and I have a decided impression upon it. But it is one upon which I prefer not to anticipate the decision of the supreme court of the state if I can avoid it. However, there is one suggestion which may not be amiss here, and that is, that the provision of the corporation act, authorizing the county court to allow the use of a "public road or street" for "the location and construction" of a railway or other road, only applies to a road or street legally established according to some mode prescribed by statute, and not to one that exists merely as a matter of fact and by sufferance of the owner of the property, or by mere parol dedication or public use.

Let the provisional injunction issue, on the plaintiff's giving bond, to the approval of the master of this court, in the sum of $10,000, restraining the defendant as prayed for in the bill until the finding or further order of this court.