## HALLYBURTON v. SLAGLE.

(Filed June 13, 1902.)

DEEDS—*Estoppel—Fraud—Bankruptcy.*

> Where a person, to defraud his creditors, conveys land, afterwards becomes a voluntary bankrupt, and the trustee in bankruptcy sells the land and the bankrupt, through another, becomes the purchaser, whatever title he gets by the deed of the trustee accrues to the benefit of the original grantee.

ACTION by W. E. Hallyburton and wife against J. L. L. Slagle, heard by Judge *M. H. Justice* and a jury, at March Term, 1902, of the Superior Court of BUNCOMBE County. From a judgment for the plaintiffs, the defendant appealed.

*Zebulon Weaver,* and *Chas. A. Moore,* for the plaintiffs. *Merrimon & Merrimon,* for the defendant.

FURCHES, C. J. This is an action of ejectment, and two lots or parcels of land are embraced in the complaint, called the first and second lots. The wife of the defendant being admitted to be the owner of lot number two, the defendant only claimed a life estate in that lot as tenant by the curtesy. But the wife having made a will devising it to the plaintiff, this defeated the husband's right to curtesy. *Tiddy v. Graves,* 126 N. C., 620; *Walker v. Long,* 109 N. C., 510. And his Honor so charged and the jury so found; and we do not understand that there is any contention as to the correctness of this charge, or the plaintiff's judgment to this lot (number two), but the contest is over lot number one.

The defendant is admitted to have been the fee-simple owner of this lot on the 18th day of April, 1868, on which day he made a deed in fee simple to N. W. Woodfin for the expressed consideration of one dollar, in trust for Winnie

Slagle, wife of the defendant, for her life, and at her death to her heirs.   A month after making the deed to Woodfin, the defendant went into voluntary bankruptcy, and a year later received his discharge from the Bankrupt Court.   One Reynolds was elected his assignee, and took charge of the defendant's estate and administered it under the bankrupt law as it existed at that time; and although the defendant did not schedule the land conveyed a month before to Woodfin, the assignee advertised and sold the lot called number one, and a man by the name of Long became the purchaser at said sale at the price of $80, which he paid.   He afterwards assigned his bid to the defendant, and the assignee Reynolds made him a deed therefor.   This deed was never registered, but the jury found that it had been made and delivered to the defendant, and had been lost or stolen.   There was evidence tending to show that the defendant had given information to the assignee of the condition of the conveyance to Woodfin, and that he procured Long to buy it for him, and the defendant was to repay Long the purchase-money, and take the deed, which he did.

The deed from the defendant to Woodfin was not probated and registered until 1894, and there was evidence tending to show that it was found among Woodfin's papers (he being dead), not being before it was registered.   The wife of the defendant died in 1896, leaving a last will and testament, by which she devised both the lots involved in this action to the *feme* plaintiff, Maggie Hallyburton.   The said Maggie and and her brother, John Slagle, were the only children and heirs-at-law of the said "Winnie Slagle," wife of the defendant.

The plaintiff claims the whole of lot number one under the will of her mother, and, secondly, under the deed of her father, the defendant, dated the 18th of April, 1868, to Woodfin, trustee.

It is clear that the plaintiff acquired no title under the will of her mother, who, at most, only had a *life estate,* and had nothing to will. And the matter depends on the deed to Woodfin and the deed from Reynolds, assignee in bankruptcy, to the defendant.

The deed from defendant to Woodfin was not registered until 1896, and the defendant contends that it could not then be registered, and was improperly admitted in evidence. It is contended that Section 1245 of The Code, extending the time to register deeds, is expressly repealed by Chapter 147 of the Acts of 1885, and, had it not been repealed, it did not extend the time to 1896. It is also contended that neither this section of The Code, nor any other section, extending the time to register, applies to the deed from the defendant to Woodfin. This we think is so, unless Chapter 147, Acts 1885, does. It was held in *Cowan v. Withrow,* 116 N. C., 771, that Section 1245 was continued by Chapter 147 to the first of January, 1896. In *Spivey v. Rose,* 120 N. C., 163, it was held that the time was extended for registering deeds of gift, but neither of those cases apply to this case, as they were registrations before the act of 1885 went into effect. So, this registration depends upon the construction given to Chapter 147, Acts 1885, and we are clearly of the opinion that act authorized its probate and registration. That act expressly provides for registration. It expressly repeals Section 1245 of The Code, and it contains no limitation as to the time when any instrument required or allowed to be registered, shall be registered. The provisions of Chapter 147, Acts 1885, are as follows: "No conveyance of land, or contract to convey, or lease of land for more than three years shall be valid to pass any property, as against creditors or purchasers for a valuable consideration from the donor, bargainor or lessor, but *from the registration thereof,* within the county where the land lieth." It is seen that there is no limitation as to

the time when the deed or other instrument shall be registered.   But it shall only be good against purchasers for a valuable consideration, creditors, etc., *from the date of its registration;* and for us to put a limitation in the statute would be to write something in the statute that is not there, and in our opinion should not be there.

The deed from the defendant to Woodfin was properly admitted to probate and registration in 1896, and was properly admitted in evidence.

There was a lengthy discussion and many authorities cited upon the question of possession—the plaintiff contended that it was in the wife, Winnie, while the defendant contended it was in him.   But we do not think it necessary to discuss this question, as the *feme* plaintiff is only entitled to the remainder after the life estate of her mother Winnie, if that much; and if she is entitled to that, under the deed of the defendant to Woodfin, no statute of limitation or presumption ran against her until the termination of the life estate, which took place in 1896.   The question, then, is she entitled to recover under the deed to Woodfin, which is a fee simple deed with a covenant of general warranty?

It is found by the jury that the deed from the defendant to Woodfin was made in fraud of the defendant's creditors, and that it was also made in fraud of the bankrupt law. This being so, upon the defendant's going into bankruptcy a month after making the deed, it became absolutely void as to the creditors of the defendant.   Bump's Law and Practice of Bankruptcy, page 382.   A voluntary conveyance by one who is insolvent is fraudulent.   *Ibid,* page 386.   And the assignment of the register in bankruptcy to Reynolds, assignee, conveyed this land to the assignee, though it was not named in the defendant's schedule.   *Glenny v. Langdon,* 98 U. S., 20.   The assignee, Reynolds, being the representative of the defendant's creditors, had the right to sell without any

special order to do so, and the purchaser got a good title, and the defendant had the right to buy in person or through another. *Gibbs v. Taylor,* 6 Cranch, 30; *Guthrie v. Bacon,* 107 N. C., 337; Bump. Law and Practice of Bankruptcy, 429; and the defendant got the title to this lot number one under the bankrupt sale and the deed of the assignee.

The deed to Woodfin was a naked trust for the benefit of the *cestuis que trust.* He had not a thing to do, not even to receive rents and pay them over. But the *cestuis que trust* were to occupy, use and enjoy it in their own way without being accountable to any one. This gave them the entire estate. *Johnson v. Prairie,* 91 N. C., 159; *Shannon v. Lamb,* 126 N. C., 38. And but for the bankruptcy proceedings, the sale of the assignee, and the purchase thereat by the defendant, it seems clear that, after the death of the life-tenant, Winnie, the plaintiff would be entitled to recover.

But, the defendant says, while that may be so, the deed he made to Woodfin has been declared void as to creditors by the bankrupt act and the proceedings in bankruptcy, and that he purchased at the bankrupt sale, got a good title, and claims under that title.

The plaintiff admits that he bought at the bankrupt sale and got the title, but she says that the title enured to her benefit; that the deed to Woodfin contained a full general covenant of warranty of title, and while the deed was void as to the creditors, it was not void as to the defendant, who can not take the benefit of his own fraud. *York v. Merrit,* 80 N. C., 285; *Peterson v. Brown,* 17 Nev., 172, 45 Am. Rep., 437; Bump. on Fraudulent Conveyances, 450. The title the defendant acquired from the assignee in bankruptcy, under the warranty in the deed to Woodfin enures to her benefit.

It is a case where the after-acquired title "feeds the warranty," and estops the defendant from claiming under his new title. The defendant had the right to make the deed to

Woodfin, and the title passed from him under that deed, and the warranty went with it; and this distinguishes it from the case of *Smith v. Ingram,* at this term, where the plaintiff had no capacity to convey, no estate passed, and as no estate passed under her deed, no warranty passed, as warranty is a covenant real and runs with the estate; and where no estate passed—did not run—the warranty did not run.

It has been found by the jury that the deed from the defendant to Woodfin was made in fraud of the defendant's creditors, and also in fraud of the bankrupt law. The general rule is that one can not take the benefit of his own fraud; that whatever effect it may have upon creditors and others, he is bound by such transactions; that as to him they are as *good and binding* as if there had been no fraud. Then, suppose the defendant, in good faith, and without intending to defraud his creditors, had conveyed this property to Woodfin with warranty, and his title turned out to be defective, and he afterwards acquired a good title; can there be any doubt but what this new title would have enured to the benefit of the plaintiff, under the doctrine of "feeding the estoppel"? And if the defendant can not take advantage of his own fraud, but stands as between him and the plaintiff as if there had been no fraud, can there be any reason why this doctrine should not apply in this case? The authorities, as well as the reason, seems to sustain this view of the case. *Gibbs v. Thayer,* 6 Cush., 30; *Jones v. King,* 55 N. C., 463; Bump. on Fraud. Con., 445. His indebtedness seems to be treated by some authorities as an incumbrance, which it was his duty to remove, and that this is the reason of the rule of estoppel. But whether this be so or not, we find it to be the established doctrine.

The fact that he can not take advantage of his own fraud, and that he sustains the same relation to the plaintiff as if the deed had been made in good faith, and the title had

turned out to be defective, and he had afterwards acquired a good title, is sufficient to give the plaintiff the benefit of the estoppel.

The judgment appealed from must be affirmed.