R. O. JEFFRESS v. THE TOWN OF GREENVILLE.

(Filed 5 April, 1911.)

1. Cities and Towns—Streets—Dedication and Acceptance—Implied —Acts of Parties.

An offer of dedication and acceptance of a way for a street in an incorporated town may be sufficiently evidenced by the acts of the owners of the land and the town authorities, and in this case the acts of dedication and acceptance held sufficient by the acts of the owners in acquiescing for years in the use of the *locus in quo* as a public street, in naming the street as boundaries to lands conveyed by the abutting owners, and by the acts of the incorporated town in paving the sidewalks of the street and maintaining it.

JEFFRESS v. GREENVILLE.

2. **Cities and Towns—Streets—Condemnation—Legislature—Inherent Powers—Constitutional Law.**

While there is no constitutional provision giving the Legislature power to condemn private lands for public purposes, the Legislature has an inherent right to do so, essential to the due exercise of the powers of government and to the promotion of the public welfare; and this power is practically unlimited, though subject to judicial control, if the purpose be a public one and sufficient provision is made for compensation to the owner of the property proposed to be taken.

3. **Cities and Towns—Streets—Condemnation—Legislative Powers—Notice—Hearings—Ordinance.**

When the charter of an incorporated town expressly provides that the town authorities may at once enter upon the land and proceed with the proposed improvements, and that the filing of the petition for the purpose of compensating the landowners shall not have the effect of stopping or delaying the work, and just compensation to the owners is properly provided for, it is not necessary to the validity of condemnation proceedings conducted in pursuance of the act that the owners of the land be notified and allowed a hearing before the passage of an ordinance of the town directing the widening and improvement of the street.

4. **Cities and Towns—Streets—Condemnation—Assessments—Commence Work.**

It is not required that an appraisement be made of the land condemned by an incorporated town for the use of its public street, before taking the same and commencing work thereon, when the town acts under legislative authority in condemning the street, and there is sufficient provision for compensating the owners of the land.

5. **Cities and Towns—Streets—Condemnation—Public Use—Questions for Court—Necessity—Legislative Powers.**

When property is condemned for a public street, it is a taking for a public use, as a matter of law; but the question as to the necessity or expediency of devoting the property to the public use is one which is exclusively within the province of the legislative department.

6. **Cities and Towns—Streets—Condemnation—Shade Trees—Damnum Absque Injuria—Legislative Powers.**

When the charter of a town expressly confers authority to widen a street and to remove any and all obstructions therefrom, and also makes adequate provision for compensation to the owner of the property taken for the purpose, the town acting in good

JEFFRESS *v.* GREENVILLE.

faith and in a careful exercise of the powers conferred is not
liable to an abutting owner for removing shade trees from the
street in front of his dwelling, for such acts are *damnum absque
injuria.*

7. Cities and Towns—Streets—Condemnation—Prior Legislative
   Acts—Interpretation of Statutes.
   A legislative act passed prior to the enactment of a charter of
   a town, in respect to condemnation proceedings, is repealed as to
   all matters in conflict with the charter; and condemnation pro-
   ceedings for street purposes being had in accordance with the
   charter provisions are not affected by restrictions placed thereon
   by the prior act.

APPEAL from *Ward, J.,* refusing to continue a restraining
order to the hearing, heard at chambers in Snow Hill, ·6 De-
cember, 1910. From PITT.

The facts are sufficiently stated in the opinion of the Court
by *Mr. Justice Walker.*

*Moore & Long for plaintiff.*
*F. N. Wooten and F. C. Harding for defendant.*

WALKER, J. This action was brought to enjoin the defend-
ant from cutting down a row of shade trees standing on the
outer edge of the sidewalk in front of plaintiff's residence in
Greenville, for the purpose of widening Fifth Street. The
court, after having granted a temporary restraining order, re-
fused to continue it to the final hearing, and the plaintiff ap-
pealed. In the complaint and also in the argument before us,
the plaintiff bases his right to injunctive relief upon the fol-
lowing grounds:

(1) The defendant does not own any easement in or title to
the strip of land now used as a sidewalk in front of the plain-
tiff's property along Fifth Street or in the street.

(2) The defendant town has not instituted condemnation
proceedings, and the removal of the trees in question is with-
out due process of law.

(3) The public interest does not demand the widening of
Fifth Street, and the removal of the trees and the widening of
the street, as ordered by the board of aldermen of the town of
Greenville, is unnecessary.

(4) The plaintiff is entitled to have an appraisement of his damages before the trees are removed and the street is widened.

(5) The board of aldermen of the defendant town, in passing the order directing the widening of Fifth Street, which is set out in the defendant's answer in the record, are attempting "without due process of law, negligently, wantonly, and without necessary procedure, and carelessly, arbitrarily, capriciously, and oppressively to cut down and remove plaintiff's shade trees."

1. There is ample evidence in the case to show that the owners of the land abutting on what is called Fifth Street had dedicated the land embraced by it to the public use, for the purpose of a street, and that the town had accepted the offer of dedication by actual user for many years and exercising authority over it as one of its public thoroughfares. *S. v. Fisher*, 117 N. C., 733; *Smith v. Goldsboro*, 121 N. C., 350; *Gilbreath v. Greensboro*, 153 N. C., 396. The town has certainly treated the way, including the sidewalks, as a street, for the sidewalks were paved under its order and direction, and it has been known and used by the citizens and recognized by the town as Fifth Street, and lots belonging to the original owners of the fee in that street have been described in deeds conveying them to other parties as abutting on the street. Elliott on Roads and Streets, secs. 117 and 163; *Mayor v. Sheffield*, 71 U. S., 189; *Bailey v. Culver*, 12 Mo. App., 175; *Kirkman v. Mayor*, 55 S. W. Rep., 1072. It cannot be doubted, we think, that Fifth Street is one of the public ways of the town, if the evidence is credible.

2. It was not necessary that the plaintiff should have been notified and allowed a hearing before the order of the board directing that Fifth Street be widened and improved was passed. It may be regarded as settled law that the power to take private property for public uses belongs to every independent government exercising sovereign power, for it is a necessary incident to its sovereignty, and requires, therefore, no constitutional recognition. *U. S. v. Jones*, 109 U. S., 513. No provision for condemnation has ever been inserted in our

Constitution, but the right of eminent domain or the right to condemn private property for public uses has always been conceded as essential to the due exercise of the powers of government and to the promotion of the public welfare. Legislation in the exercise of this inherent power, though subject to judicial control, is said to be practically unlimited, if the purpose be a public one and sufficient provision is made for compensation to the owner of the property proposed to be taken. *R. R. v. Davis,* 19 N. C., 451; *Lecombe v. R. R.,* 23 Wallace, 108. The mode of exercising the power of eminent domain, unless otherwise provided in the organic law, rests in the sound discretion of the Legislature, subject, however, to the principle just stated, that there must be sure and adequate provision for compensating the owner. *McIntire v. R. R.,* 67 N. C., 278; *Lecombe v. R. R., supra; Searl v. School Dist.,* 133 U. S., 553; *Cherokee Nation v. R. R.,* 135 U. S., 641. If the facts of this case are examined in the light of the foregoing principles, it cannot be doubted that the Legislature has assumed to exercise its unquestionable right to have land condemned in the town of Greenville for public streets. The Legislature has conferred upon the town commissioners general authority to act in the premises where lands are required for the purpose of opening and laying out streets or for other public purposes, and has also provided a perfectly fair and sufficient method for ascertaining and paying just compensation to the landowners whose property may be taken for the purpose. *S. v. Jones,* 139 N. C., 613. The present charter of the town, which was enacted long prior to the condemnation of the land, alleged to be unlawful, expressly provides that the town authorities may at once enter upon the land and proceed with the proposed improvements, and that the filing of the petition for the purpose of having the compensation of the landowner ascertained shall not have the effect of stopping or delaying the work; so that the reasons for the dissent from the opinion and judgment in *S. v. Jones,* by *Justice Connor,* do not apply to this case, it being wholly based upon a construction of the charter of Creedmoor, which had no provision such as we find

in the charter of Greenville.  Private Laws 1899, ch. 115, as amended by Private Laws 1909, ch. 18.  The commissioners, as appears in the case, have proceeded in accordance with the power and authority vested in them by the Legislature, and we do not see how the regularity or validity of their action can well be challenged upon any recognized principle of law. But the plaintiff, in his fourth contention, says that the defendant cannot lay an axe to a single one of the trees on the sidewalk in front of his lot, which shelter his home—not even touch a single bough—until there has been an appraisement of his damage in the manner prescribed by its charter.  We do not understand the plaintiff to assert that the damages must be paid before any work of widening and improving the streets is entered upon, and this being so, what advantage does he derive by an appraisement without payment?  But this Court has decisively answered this contention against the plaintiff. In *McIntire v. R. R.*, 67 N. C., 278, it is said: "If the owner of land, overflowed by a milldam could bring his action on the case for damages every day, no public mill could be established. In like manner, if the owner of land taken by a railroad for its track could bring his action of trespass every day, no railroad could be built. . . . If the officers of the company cannot enter on lands and make surveys without a trespass, they could never locate the road.  And if the road were located, and its construction delayed until the damages to all the landowners on the route were ascertained under the act, the delay would be indefinite and no benefit to any one.  To hold that during the pendency of a proceeding by the company to have the lands condemned, it could not prosecute its work without being exposed daily to an action of trespass, would effectually defeat the policy of the act."  To the same effect is *Johnston v. Rankin*, 70 N. C., 550: "There is, therefore, nothing to forbid the defendants from proceeding with the improvement pending the appeal.  The law of this State does not require compensation to be *first* made, as that of some other States does."  In that case the charter of Asheville did not expressly authorize an entry upon the land before an assessment of damages.  See,

also, *R. R. v. Davis,* 19 N. C., 451; *Phifer v. R. R.,* 72 N. C., 433; *R. R. v. McCaskill,* 94 N. C., 746; *S. v. Jones, supra; S. v. Lyle,* 100 N. C., 497; *R. R. v. R. R.,* 116 N. C., 924.

Lewis in his treatise on Eminent Domain, sec. 456, says that in most States, and by the greater weight of authority, it is held that the making of compensation need not precede an entry upon property, provided some definite provision is made whereby the owner will certainly obtain compensation for the loss of his property, using that word in its most extensive sense, as indicating injury to any of his property rights. He classifies the courts thus holding, and assigns this Court to a place with the large majority. The dissenting courts were influenced in their decisions either by some peculiar local law or held that the owner of property required for public use should not be compelled to part with it without some adequate assurance that he will receive compensation, and should not be made to take any risk of compensation; but in this respect our decisions fully protect him by allowing the courts to require security for the ultimate payment of damages, to be given in proper cases before the entry upon the land. *Phifer v. R. R., supra; R. R. v. R. R., supra; Cherokee Nation v. R. R.,* 135 U. S., 641. What was said in *Sweet v. Rechel,* 159 U. S., 380, is very pertinent to this discussion: "When, however, the Legislature provides for the actual taking and appropriation of private property for public uses, its authority to enact such a regulation rests upon its right of eminent domain—a right vital to the existence and safety of government. But it is a condition precedent to the exercise of such power that the statute make provision for reasonable compensation to the owner. . . . It is equally clear that an adequate provision is made when the statute, authorizing a public municipal corporation to take private property for public uses, directs the regular ascertainment, without improper delay and in some legal mode, of the damages sustained by the owner, and gives him an unqualified right to a judgment for the amount of such damages which can be enforced, that is, collected, by judicial process. . . . The Constitution declares that private property shall not be

taken 'for public use without just compensation.' It does not provide or require that compensation shall be actually paid in advance of the occupancy of the land to be taken. But the owner is entitled to reasonable, certain, and adequate provision before his occupancy is disturbed." Those decisions are, of course, predicated on the absence of any special requirement of the local law that an appraisement and payment of the damages shall be made before the actual taking and entry upon the property. They will, therefore, be modified in their application to any given case by local provisions in respect to the matter.

3. The plaintiff further contends that the public interest does not demand that the street be widened and the trees destroyed, as ordered by the board. Eminent domain is the right or power of a sovereign State to appropriate private property to particular uses, for the purpose of promoting the public welfare. 1 Lewis Em. Dom., sec. 1. Being an essential attribute of sovereignty, it is exercised by the people through the Legislature, to which it has been delegated. The time and manner of its exercise must, from its very nature, be left to the discretion and wisdom of that body. When conferred upon some subordinate municipal body, the same discretion necessarily resides in it. Referring to the questions which may arise in the procedure for the condemnation of private property for public use, we find in Lewis on Eminent Domain, sec. 366, the following rule: "All questions relating to the exercise of the eminent domain power, which are political in their nature and rest in the exclusive control and discretion of the Legislature, may be determined without notice to the owner of the property to be affected. Whether the particular work or improvement shall be made, or the particular property taken, are questions of this character, and the owner is not entitled to a hearing thereon as a matter of right. 'The commissioners, in determining this preliminary question of the necessity of appropriating lands for the purposes of a ditch, are called to the exercise of political and not judicial powers. It is a question

154—32

rather of public policy than of private right. It is not upon the question of the appropriation of lands for public use, but upon that of compensation for lands so appropriated, that the owner is entitled, of right, to a hearing in court, and the verdict of a jury.' " *Zimmerman v. Canfield,* 42 Ohio St., 463; *S. v. Jones, supra.* What is a public use is a question for the decision of the judiciary, and whether any particular use is a public one must be decided in the same way. When property is condemned for a public street, it is a taking for a public use, as a matter of law, and this being determined, the question as to the necessity or expediency of devoting the property to the public use is one which must be left to the legislative department. *Call v. Town of Wilkesboro,* 115 N. C., 341; *Stratford v. Greensboro,* 124 N. C., 127; *Cozard v. Hardwood Co.,* 139 N. C., 283. This subject was fully considered in *Hull v. Roxboro,* 142 N. C., 453, in which we said: "The general rule in reference to the particular question herein involved, therefore, is that where injuries are incidentally committed by the officers or agents of a public corporation, in the exercise of those discretionary or legislative powers which are delegated to them by the Legislature, or when, by reason of any failure to exercise them, the same result follows, the municipality is wholly free from liability. 1 Beach Pub. Corp., secs. 258, 773, 752." This rule was supported by the citation of numerous authorities, and among others, this extract from Cooley Const. Lim. (7 Ed.), 300: "As no State can or does undertake to protect its people against incidental injuries resulting from its adopting or failing to adopt any proposed legislative action, so no similar injury resulting from municipal legislative action or nonaction can be made the basis of a legal claim against a municipal corporation. If, therefore, a city temporarily suspends useful legislation; or in any other manner, through the exercise or failure to exercise its political authority, causes incidental injury to individuals, an action will not lie for such injury. The reason is obvious. The maintenance of such an action would transfer to court and jury the discretion which the law vests in the municipality,

but transfer them not to be exercised directly and finally, but indirectly and partially by the retroactive effect of punitive verdicts upon special complaints." See 1 Smith Mod. Law of Mun. Corp., secs. 269, 270, and 271. The very question we now have under consideration was presented in *Tate v. Greensboro,* 114 N. C., 392, and the authority of the city to remove trees for the purpose of opening or improving a street was emphatically affirmed in a learned opinion by *Justice Burwell,* and in *Rosenthal v. Goldsboro,* 149 N. C., 128 (reported with an elaborate note in 16 Am. and Eng. Anno. Cases, 639), *Justice Hoke* reviews that case and deduces therefrom certain rules by which may be tested the right to revise the action of the local municipal board in regard to the opening and improvement of streets within a city, which, if applied to the facts of this case, prevent us, as they do the lower court, from entering upon any such revision. In the *Tate case,* it is said that, "The law gives to all such corporations an almost absolute discretion in the maintenance of their streets, considering, it seems, as is most reasonable, that wide discretion as to the manner of performance should be conferred where responsibility for improper performance is so heavily laid." Reference is then made to the provision of the statute that the boards of commissioners of towns shall provide for keeping in proper condition the streets and bridges in the same, in the manner and to the extent they may deem best. Revisal, sec. 2930. It was concluded that under the general law and the charter of Greensboro, which confers no larger powers than those found in the charter of Greenville, that city was clothed with a broad discretion in the control and betterment of its streets, and if damages had come to the plaintiff by reason of acts done by it for that purpose, neither negligently nor fraudulently, maliciously nor wantonly, but in good faith and in the careful exercise of that discretion, it is *damnum absque injuria,* citing *Chase v. City of Oshkosh,* 81 Wis., 313; *Smith v. Washington,* 20 How., 136; *Brush v. Carbondale,* 78 Ill., 74; *Pontial v. Carter,* 32 Mich., 164. While this question is a very important one, we scarcely need to prolong the discussion of it, as a

full and exhaustive examination of the leading authorities will be found in the note to *Rosenthal v. Greensboro,* 16 Am. and Eng. Anno. Cases, at page 642, and we think the views stated by us are well supported by them and the other cases we have cited, to which we add *Durham v. Rigsbee,* 141 N. C., 128, where it was held: "The advisability of widening a street is a matter committed by law to the sound discretion of the aldermen, with the exercise of which neither these defendants nor the courts can interfere. It is a political and administrative measure as to which the defendants are not even entitled to notice or to be heard. The method of taking land for a public use is within the exclusive control of the Legislature, limited by organic law, and the courts cannot help the injured landowner, where the statute has been strictly followed, until the question of compensation is reached."

The liability of a municipal corporation for negligence in the construction of public works and in making improvements in its streets is fully considered in several cases decided by this Court. *Jones v. Henderson,* 147 N. C., 120, in which the cases are collected. The charter of the defendant expressly confers full authority to widen Fifth Street and to remove any and all obstructions therefrom, whether of a temporary or permanent character, and also makes adequate provision in every way for compensation to the owner of property taken for the purpose of laying out or widening streets.

The judge found as a fact that there had been no abuse of the defendant's discretion in ordering this street to be widened and no oppression on its part of the plaintiff, and we are not disposed, upon the proof now before us, to change this finding. But while we so rule, and our decision must be against the plaintiff, there are some facts and circumstances which should make the defendants pause and consider, and to decide after greater reflection, whether they are being really just to the plaintiff in the manner of exercising their discretion, and whether, without impairing in the least the public interest, which must be first considered, there is not some way by which that interest can be fully subserved, and the trees, which afford

shade and comfort to the plaintiff's home, left standing. If, in the fair and honest exercise of their judgment, no plan can be thus devised, the trees must be sacrificed for the public good, for it is one of the first maxims of government and the law that private convenience must yield to that of the public (*privatum commodum publico cedit*), and such a private loss must seek, and can only find, its just compensation in the corresponding public benefit (*privatum incommodum publico bono pensatur*). It appears by the evidence and the map filed in the case, that if the present plan of improvement is not altered the trees will obstruct the roadway, as that part of the sidewalk where they now stand will become a part of the street between the curbs. We would hesitate to interfere with the exercise of the sound judgment of those who have the matter in their charge, except in an extreme case indicating bad faith, malice, or wantonness, for they are trustees of the public, and as such, vested with a very large discretion, as we have shown; but they should discharge their duty to the public with as little injury to the citizen as is possible under the circumstances.

We must not be understood as intending to interfere with the free exercise of the discretionary power conferred upon the commissioners of the town, but as merely suggesting that while their discretion should be exercised primarily in favor of the public welfare, their duty is not so limited in its sphere that the citizen is not entitled to some consideration. We cannot control the exercise of their judgment upon matters of a legislative or administrative character, unless, as we have said, they act fraudulently, maliciously, or wantonly, and, instead of trying to promote the public good in the execution of the trust and confidence reposed in them, they seek to injure and oppress the citizen and deprive him of his property under the form of law.

Section 23, chapter 85, Laws 1885, placing restrictions upon the right of condemnation for street purposes in Greenville, has no bearing on the case, as the Legislature does not, in such a way, surrender its power of eminent domain. Nichols on Em. Dom., sec. 315. That act has been repealed by the subse-

quent charter of the town and the amendment thereto, at least in so far as they conflict with it, and the repeal was within the legitimate exercise of legislative authority. Elliott on Roads and Streets (2 Ed.), sec. 186 and note 2..

We must declare that there is no error in the judgment.
Affirmed.