UNITED STATES of America

v.

Charles O. MARTIN, Raymond F. Farrar,
Hazel M. Farrar, Floyd B. Martin.

Civ. No. 771.

United States District Court
M. D. North Carolina,
Greensboro Division.

April 2, 1956.

Edwin M. Stanley, U. S. Atty., Greensboro, N. C., for plaintiff.

James G. W. MacClamroch, D. Newton Farnell, Jr., W. E. Comer, Greensboro, N. C., for defendants.

HAYES, District Judge.

The plaintiff relies upon the provisions of 3846bb of Michie's Code of 1939, now General Statutes, § 136–19, for the proposition that the State of North Carolina through its agency, State Highway and Public Works Commission, acquired fee-simple title to a strip of land 100 feet wide and 5,137.6 feet in length, containing 11.5 acres, being an approach to and through the Guilford Battleground National Park, by filing in the office of the Register of Deeds of Guilford County a map to that effect, Exhibit 3, on October 15, 1936, pursuant to a resolution of appropriation adopted by the Highway Commission June 19, 1936. It was acquired for the purpose of conveying it to the United States as a part of the National Park. Since the map could not be found in the Register's Office, although he certified that it was filed, another map to the same effect was filed and recorded on 10th day of June, 1938.

On April 14, 1937 the State of North Carolina executed and delivered to the United States a warranty deed in fee simple for the above strip of land which deed was recorded April 21, 1937, in Book 810, page 257.

The defendants or those under whom they claim owned a tract of land containing 37 acres on the south side of the strip of land and fronting it for 1,366.65 feet. The State's deed to the plaintiff includes a strip of land 20 feet wide and 1,366.65 feet in length which was the property of the defendants or those under whom they claim.

The procedure employed is somewhat novel in that the land to be taken was not marked by metes and bounds nor did actual possession of the 100-foot strip to its outer boundaries ever occur. However, the United States took control over the tract deeded to it and has maintained the road through the center of it pursuant to the deed. But the Highway Commission never staked out the boundaries or served any notice on the owner of its taking the property, other than such notice as arises in law by the filing and registration of the map.

C. O. Martin, under whom the present defendants claim, opened up a road 28 feet wide through his land into the strip of land conveyed to the United States. The caretaker of the Park under the direction of the Secretary of the Interior erected a barricade across Martin's road along the Southern line of the 100-foot strip of land. Martin or his servants tore away the barricade and this suit is to restrain him and those claiming under him from using this access road or otherwise interfering with the possession of the United States.

There are other complications. Public Service Liberty Club, Inc. owned the 37-acre tract of land during the happening of the above events. On March 1, 1938, this corporation executed and delivered to North Carolina State Highway and Public Works Commission a deed to a strip of land 20 feet wide and 1,366.65 feet long as shown by Exhibit 10 which deed provided that the strip could be used solely for park, parkway or highway purposes and "subject to a right of way or easement in, over and upon said parcel of land at such intervals and places as may reasonably be necessary or requisite to a proper use and enjoyment of the adjoining land of said party of the first part, it being the purpose of this reservation of easement to provide for driveways and passageways for the benefit of said adjoining land for purposes of ingress, egress and regress to and from said adjoining land and said East-West road" (100-foot strip of land). This deed was never recorded nor returned to the corporation. The original was not found but plaintiff produced a photostatic copy

of it. The Secretary of the Interior did not accept the deed in the manner required by the Act of Congress approved March 2, 1917, 39 Stat. 996, Executive Order No. 6166 dated June 10, 1933, 5 U.S.C.A. §§ 124–132 note and the Act of June 5, 1920, 41 Stat. 917. But the deed from North Carolina to the United States was so accepted June 7, 1937.

The present road controversy was regarded as Martin's private road until in 1952 when the State Highway and Public Works Commission added it to its system and made it a public road. The defendants enumerated as the Commission and its members now admit they had no authority to do this and a judgment against them has been entered with their consent but over the objection of the other defendants. The remaining defendants and those under whom they claim had no actual knowledge that the United States had a deed in fee simple for the 100-foot strip of land until this litigation arose pursuant to the erection and removal of the barricade across the Martin road. They now contend that neither they nor those under whom they claim have been compensated for the land and that the plaintiff has no title to the land, or in so far as their part of the 100-foot strip is concerned, that they have never been ousted from title or possession.

■ The Statute under which the Commission acquired title to the 100-foot strip of land provides that the commission may acquire fee-simple title in connection with federal parkways and it further provides that "the nature and extent of the right of way and easements so acquired or appropriated shall be designated upon a map showing the location across each county, and, when adopted by the Commission, shall be filed with the register of deeds in each county, and, *upon the filing of said map,* such title shall vest in the State Highway and Public Works Commission. The said Commission is hereby authorized to convey such title so acquired to the United States government, or its appropriate agency, free and clear of all claims for compensation. All compensation contracted to be paid or legally assessed shall be a valid claim against the State Highway and Public Works Commission". The Act does not specifically require the map to be recorded but there are other Statutes requiring the registration of titles to real property and if we assume that registration is necessary, the subsequent filing and recordation of the map June 10, 1938, constituted the vesting of title in the Commission and divested the landowner of the title thereto. The previous warranty deed by the State of North Carolina to the United States operated to validate the title of North Carolina if it was defective under the well-known doctrine of "feeding estoppel." Hallyburton v. Slagle, 130 N.C. 482, 41 S.E. 877. It does not follow that this applies to possession. While this court is not required to pass on the damages, it appears that the owner's right to damages would not arise until he was ousted of his possession or at least until he had some form of actual notice that his land was taken for public purpose. It is inconceivable that the mere recordation of the map in the office of the Register of Deeds could start the statute of limitations running against him. Something in the nature of taking possession or the equivalent or actual notice would be necessary. The Statute provides for bringing an action for the damages within 12 months from the completion of the project. But here no project was commenced, hence could not be completed. Moreover, the commission would probably be estopped to plead the Statute of Limitations before the determination of this matter by virtue of accepting a deed reserving rights of way to the access roads.

■ It is the settled law in North Carolina that private property cannot be taken for public use without just compensation. Jeffress v. Greenville, 154 N.C. 490, 70 S.E. 919; Yarborough v. North Carolina Park Comm., 196 N.C. 284, 145 S.E. 563; Lewis v. N. C. State Highway & Public Works Comm., 228 N.C. 618, 46 S.E.2d 705; McKinney v. High Point, 237 N.C. 66, 74 S.E.2d 440;

Eller v. Board of Education, 242 N.C. 584, 89 S.E.2d 144; State Highway & Public Works Commission v. Hartley, 218 N.C. 438, 11 S.E.2d 314. In the Hartley case the commission acquired 167 acres of defendant Hartley's land December 18, 1935, under the same statute and the court treated the taking as of December 18, 1935 and reversed the judgment because evidence was admitted as to its value at the time of trial in 1939.

It has been determined that the act in question affords ample provision for the ascertainment and payment of compensation to the owner for property acquired for public use and does not offend against the federal or state constitution. Sun Crest Lumber Co. v. North Carolina Park Comm., D.C., 30 F.2d 121 in an able and elaborate opinion by Judge Parker.

▮ It is not necessary for the compensation to be paid first as a prerequisite to the vesting of title. The sovereign can take private property for public use in such manner as it prescribes provided compensation can be properly ascertained and paid. Jeffress v. Greenville, supra; Yancey v. North Carolina State Highway & Public Works Commission, 222 N.C. 106, 109, 22 S.E.2d 256; Jacobs v. United States, 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142.

▮ There is ample authority to the effect that the *owner or the condemnor* can initiate proceedings for the assessment of damages. Proctor v. State Highway & Public Works Commission, 230 N.C. 687, 55 S.E.2d 479.

It is important to recognize that the United States now owns and maintains a National Park where the battle of Guilford Court House was fought in the war for American independence. The parcel of land deeded by North Carolina to the United States has a paved road in the center of it. The Secretary of the Interior would not accept the responsibility of the road and its maintenance except upon a warranty deed in fee simple for a width of 100 feet across the park and without cost to the United States. The United States assumed possession and control, then it, through the Secretary of the Interior, accepted the title in fee simple to the entire parcel of land. There can be no doubt about the power of the State to acquire the land in fee for the above purpose, Roe v. Kansas, 278 U.S. 191, at page 193, 49 S.Ct. 160, 73 L.Ed. 259, nor of the right to the owner to get compensation if he does not let the statute of limitations run against him and bar his right as it did in Carolina & N. W. Ry. Co. v. Piedmont Wagon Manufacturing Co., 229 N.C. 695, 51 S.E.2d 301. And the compensation is to be determined as of the time of taking for the part taken, including the entire surface of the right of way whether used or not, and compensation for injury to the remaining portion of the land, offset by general and special benefits. North Carolina State Highway Commission v. Black, 239 N.C. 198, 79 S.E.2d 778.

Since the construction and maintenance of a public road through a tract of land may enhance the value of the portion not taken, a very serious question arises when the public authority denies or refuses to allow the abutting owner the privilege of access to the very right of way involved, and of the power of a court to restrain him from such use. See Sanders v. Smithfield, 221 N.C. 166, 19 S.E.2d 630 distinguishing Hiatt v. Greensboro, 201 N.C. 515, 160 S.E. 748; Mosteller v. Southern Railroad Co., 220 N.C. 275, 17 S.E.2d 133; Woody v. Barnett, 239 N.C. 420, 79 S.E.2d 789. The subject is dealt with extensively in Anzalone v. Metropolitan District Commission, 257 Mass. 32, 153 N.E. 325, 47 A.L.R. 897 and note page 902.

▮ When the United States acquires title to land, it can be divested of such land only in such manner as the Acts of Congress may authorize. Congress vested in the Secretary of the Interior the control, maintenance and authority over National Parks, Park roads and approach roads to National Parks and National Monuments. 16 U.S.C.A. §§ 8a and 8c. Title 36, Sec. 1.31(d), Code of Federal Regulations provides:

"No person, firm, or corporation shall construct, or attempt to construct, a road, trail, path, or other way, over, across or upon any Federally owned land within any park or monument without a revocable permit from the Director or, when authorized by the Director, the appropriate Regional Director."

The Regulations of the Secretary of the Interior are presumed to rest on facts justifying them. Perko v. U. S., 8 Cir., 204 F.2d 446; Bailey v. Holland, 4 Cir., 126 F.2d 317, 322; United States v. Commodore Park, Inc., 324 U.S. 386, 65 S.Ct. 803, 89 L.Ed. 1017.

In Perko v. U. S., injunction was granted to restrain use of air, although it was the only means of egress and access to their property.

It therefore follows that an injunction issue against the defendants restraining any interference with the land of the plaintiff without a permit from the Secretary of the Interior or other lawfully authorized officer of the United States.