**UNITED STATES of America, Plaintiff,**

v.

**Charles O. MARTIN, Raymond F. Farrar, Hazel M. Farrar, Floyd B. Martin, Defendants.**

**Civ. No. 771-G.**

United States District Court
M. D. North Carolina,
Greensboro Division.

June 20, 1958.

ing was directed to the facts concerning acts of possession or dominion exercised by the State Highway and Public Works Commission, an agency of the State of North Carolina, or by its grantee, the United States, accompanying the filing of the maps of 1936 and 1938.

For the purpose of disposing of the matter here, we may assume that the map of 1936 did not divest title since it was not recorded. This was the view of the General Counsel of the Highway Commission and to cure the defect it caused an identical map to be filed and recorded in the Office of the Register of Deeds for Guilford County on June 10, 1938. Our previous decision was based on the theory that the mere filing of this map vested title in the State, but the Court of Appeals held that it would be necessary to show notice to the owner or be "accompanied by acts of dominion sufficient to constitute taking possession of, or assertion of dominion over such lands."

The United States accepted a warranty deed from the State of North Carolina April ——, 1937, for a strip of land 100 feet wide and about one mile long on which the State of North Carolina had a public highway. A part of the highway is inside a portion of the Guilford Courthouse National Military Park. The defendant C. O. Martin owned a 37 acre tract of land at the eastern terminus of this road and fronted on the south side of it for 1,366.65 feet, but some distance east of the Government park.

After getting the warranty deed in April, 1937, the United States soon started construction of a paved road on the land embraced in the deed. It was surveyed by the United States, staked off, 50 feet on each side from the center line called for in the deed, and for about one year the grading and surfacing continued until its completion in 1938. After the completion of the pavement, the Park Service sodded the land and seeded in grass the unpaved portion of the 50-foot strip south of the center line and thereafter mowed the grass

Robert L. Gavin, U. S. Atty., and John E. Hall, Ass't U. S. Atty., Greensboro, N. C., for plaintiff.

D. Newton Farnell, Jr., William E. Comer and James G. MacClamroch, Greensboro, N. C., for defendants.

HAYES, District Judge.

This is the case reported in D.C., 140 F.Supp. 42 and reversed in Martin v. U. S., 4 Cir., 1957, 240 F.2d 326. The additional evidence at the second hear-

and daily inspected and kept clean the land in controversy.

Some two or three years later C. O. Martin stretched a three-strand wire fence parallel with the pavement which the Court has found to be 50 feet from the center of the pavement. The pavement was approximately 20 feet wide and extended from the east end to the west end. No other abutting owner has raised any question about the title of the United States to this strip of land which embraces about 11½ acres. The United States by the Park Service has maintained the highway and exercised such dominion over it as it was susceptible of until C. O. Martin in 1945 decided to extend the Nathaniel Greene Highway into this East-West highway. Martin sought permission of the Park Service to do this but it was not given. He made the connection anyway and thereafter the State Highway and Public Works Commission adopted it into the State Highway system of public roads and has maintained it.

Assuming as we do, that the map filed June 10, 1938, and recorded as required, is the one which constitutes the true basis of the State's title and that the paving was completed about that time,—although it had been in progress for a year,—the sodding and seeding of the unpaved portion of the strip and its maintenance by the Park Service accompanied the filing of the map in such a way as to put the owner on notice that the United States was in possession and taking dominion over the land. What constitutes "taking" is a very indefinite and flexible term and varies according to the facts of each "taking." See United States v. Dow, 78 S.Ct. 1039. The placing by the defendant C. O. Martin of the three-strand wire fence 50 measured feet south of the center line and the use of the land to the fence by the plaintiff amply warrant the finding that the plaintiff's possession of the land put the defendant on notice that the United States was claiming it under its deed and the State's map from its registration in June, 1938.

While it is true that the owner has never been compensated for the strip of land, he has had available a remedy against the State or against the United States under the Tucker Act, 28 U.S.C.A. §§ 2401 et seq. In view of the fact that the plaintiff has the defendant's land and has not compensated him for it and closing the highway would damage him more and would not benefit the plaintiff, should a court of equity grant an injunction to close the highway?

In Lacy v. U. S., 5 Cir., 1954, 216 F.2d 223, 225, cited in Martin v. United States, supra, it is said: "The Government when applying for relief in a court of equity is as much bound to do equity as is a private litigant. * * 'When the United States comes into Court to assert a claim it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter.'" Unless and until the owner has been compensated by the United States, or its grantor, for the entire strip fronting the East-West Highway 1,366.65 feet, the Court cannot, in good conscience, enjoin the use of the 28 foot highway. A court of equity cannot blind its eyes to the public's interest in this matter. It conclusively appears that the highway is an important connecting link between the City Park and playgrounds and the National Park; its public necessity has been ascertained by the State Highway and Public Works Commission; the Court's personal inspection of the area also convinces the Court that the continued public use of the highway cannot injure the plaintiff and would be against the public interest.

Therefore, the Court will refuse to close the highway unless and until the owner has been compensated for all the land taken, and will reserve the power to decide in that event whether an injunction should be then granted.