STATE HIGHWAY & PUBLIC WORKS COMMISSION v. FRANK J. HARTLEY.

(Filed 7 November, 1940.)

**1. Eminent Domain § 8—**

In proceedings to take land for a public highway, the measure of damages is the difference in the fair market value of respondent's land immediately before and immediately after the taking, the elements upon which the damages are predicated being the fair market value of the land taken and injury to respondent's remaining land, less any general and special benefits accruing to respondent from the construction of the highway.

**2. Same—**

Damages recoverable in condemnation proceedings must be ascertained as of the time of the taking, but evidence of the value of respondent's land within a reasonable time before and after the taking is competent, the reasonableness of the time being dependent upon the nature of the property, its location and surrounding circumstances, and whether the evidence offered fairly points to its value at the time in question.

**3. Same—Evidence of value of respondent's land some four years subsequent to taking held too remote under the facts of the case.**

Respondent's land was taken for a scenic highway in December, 1935. Testimony of witnesses as to the value of respondent's land in 1938 and 1939 was admitted over objection, although the witnesses stated on *voir dire* that they knew nothing of the condition and accessibility of the land at the time of the taking. The evidence disclosed that the only entrance to the land before the construction of the parkway was by private road. Respondent testified that there had been no change in the land between these dates except for the construction of the parkway. There was evidence that the value of the land in the community fluctuated and that its value had increased after the construction of the parkway. *Held:* Respondent's testimony that there had been no change in the land between the dates except for the construction of the parkway is not equivalent to a statement that there had been no change in its value, and the testimony objected to should have been excluded as being too remote to be competent upon the question of the value of the land at the time of the taking.

**5. Trial § 12—**

Whether the jury should be allowed to view the *locus in quo* is within the discretion of the trial court, although a jury view is usually had by consent of the parties rather than over the objection of one of them, but appellant's exception to the action of the trial court in permitting a jury view need not be determined on this appeal, since a new trial is awarded on other exceptions.

CLARKSON, J., not sitting.

APPEAL by petitioner from *Bobbitt, J.,* at June Term, 1940, of WILKES.

Special proceeding to determine compensation to be paid for land taken in area of Blue Ridge Parkway.

On 18 December, 1935, the State Highway & Public Works Commission, pursuant to the law as set out in section 3846 (bb), Michie's Code of 1939, appropriated 167 acres of respondent's land on Tompkin's Knob and conveyed it to the United States Government for use in the construction of the Blue Ridge Parkway. The land appropriated was part of a 337-acre tract, without buildings or other improvements thereon. A few spots had in time been cultivated, and the major portion of it gave the appearance of having been cleared land. Originally it had been covered with chestnut trees, but these had died from blight. It was good grazing land. The only approach to the property prior to the construction of the Parkway, was by means of a private road. It is now a part of the Scenic Highway and is traversed by a motor road. Its elevation is about 4,000 feet above sea level.

It was conceded on the hearing that the value of the property was to be fixed as of the time of the taking, to wit, 18 December, 1935.

The respondent offered T. E. Story as a witness, who said that he had gone over the property with Mr. Hartley in 1939 for the purpose of forming an estimate of its value, but that he had never seen it theretofore and was not familiar with its condition, accessibility, etc., in 1935. The court ruled that the witness was not competent to express an opinion as to the value of the property on 18 December, 1935. Whereupon, the respondent was recalled to the stand and testified: "There has been no change in the land since 1935, except the construction of the Scenic Highway," albeit the respondent had previously testified: "The park people have cleaned up some of the dead stuff since the land was taken, some on the knob." The court then ruled that the witness Story would be permitted to give his opinion as to the value of the property in 1939. He fixed the value as of that time at $200 an acre. Objection; exception.

Following this ruling, and over objections duly entered, the respondent was allowed to offer the testimony of other witnesses who expressed opinions that in 1939, when they saw the property for the first time, its value was (1) $200 an acre (Charlie Miles and P. E. Brown), (2) $150 an acre (C. C. Faw, W. W. Turner and C. C. Siddon), (3) from $125 to $150 an acre (C. A. Lowe), and two witnesses (Ralph Duncan and C. E. Jenkins) expressed opinions that in 1938, when they first saw the property which had been taken, its total value was $22,000. All of these witnesses stated on the *voir dire* that they were not familiar with the property in 1935 and knew nothing of its condition, accessibility, etc., on 18 December of that year.

There was evidence on behalf of the petitioner tending to show that the value of the property, at the time of the taking, was from $20 to $35 an acre.

At the conclusion of the evidence, on motion of respondent and over objection of the petitioner, the jury was allowed to view the premises. Exception.

The jury returned the following verdict:

"What sum, if any, is respondent entitled to recover of petitioner for the appropriation of the lands described in paragraph 3 as amended of the petition, together with the damages, if any, to the remainder of the 337-acre tract described in the answer, over and above all general and special benefits, if any, accruing to respondent's lands by reason of the construction of the Parkway? Answer: '$20,000.' "

From judgment thereon, the petitioner appeals, assigning errors.

*W. H. McElwee, Charles Ross, and Ernest Gardner for petitioner, appellant.*

*A. H. Casey, Trivette & Holshouser, and John R. Jones for respondent, appellee.*

STACY, C. J. It is conceded that the measure of damages, presently applicable, is the difference in the fair market value of respondent's land immediately before and immediately after the taking. *Elks v. Comrs.,* 179 N. C., 241, 102 S. E., 414. The items going to make up this difference are understood to embrace compensation for the part taken, and injury to the remainder, which is to be offset by any general and special benefits accruing to the landowner from the construction of the Parkway. *Bailey v. Highway Com.,* 214 N. C., 278, 199 S. E., 25; *Wade v. Highway Com.,* 188 N. C., 210, 124 S. E., 193; *Power Co. v. Power Co.,* 186 N. C., 179, 119 S. E., 213; *Brown v. Power Co.,* 140 N. C., 333, 52 S. E., 954.

It is further conceded that the time of the taking was 18 December, 1935, and that the award is to be made as of this date. *Hart v. R. R.,* 144 N. C., 91, 56 S. E., 559.

In determining the fair market value of property taken in condemnation, it is generally regarded as competent to show the value of the property within a reasonable time before and/or after the taking as bearing upon its value at the time of the appropriation. *Ayden v. Lancaster,* 197 N. C., 556, 150 S. E., 40; *DeLaney v. Henderson-Gilmer Co.,* 192 N. C., 647, 135 S. E., 791; *Wyatt v. R. R.,* 156 N. C., 307, 72 S. E., 383; *Grant v. Hathaway,* 118 Mo. App., 604; 8 R. C. L., 489. The rule is necessarily one of variableness in the time limits, depending upon the nature of the property, its location and surrounding circumstances, and whether the evidence offered fairly points to its value at the time in question. *Newsom v. Cothrane,* 185 N. C., 161, 116 S. E., 415; *Powell*

*v. R. R.,* 178 N. C., 243, 100 S. E., 426; *Myers v. Charlotte,* 146 N. C., 246, 59 S. E., 674; *Wade v. Tel. Co.,* 147 N. C., 219, 60 S. E., 987.

It follows, therefore, that when the evidence is too remote in point of time to throw any light on the fact in issue, to wit, the fair market value of the property at the time of the taking, it is incompetent and should be excluded. *City of Portland v. Tigard,* 64 Or., 404, 129 Pac., 755, on rehearing, 130 Pac., 982. "The general rule is, that testimony as to market value at a time too remote from the date in question to be of any probative value should be excluded"—*Baugh, J.,* in *Reed v. So. Pac. Co.,* 99 S. W. (2d) (Tex.), 1026. Such evidence can be of no assistance to the jury in arriving at a proper conclusion. *Oregon R. & N. Co. v. Eastlock,* 54 Or., 205, 102 Pac., 1014, 20 Ann. Cas., 692. On the other hand, it may be particularly damaging to the petitioner's cause. *Moore v. Hutchinson,* 107 W. Va., 275.

Speaking directly to the question here presented, in *Power Co. v. Hayes,* 193 N. C., 104, 136 S. E., 353, *Connor, J.,* delivering the opinion of the Court, said: "Respondents are entitled to recover as just compensation for the 29.5 acres of land described in the petition its value at the time it was taken. . . . No change in the value of said land after said date, whether caused by the use for which it is to be condemned or not, can be considered in determining the amount which respondents shall receive and petitioner shall pay as just compensation for same."

Again, speaking to a kindred situation in *Beedle v. Campbell,* 100 Fed. (2d), 798, it was said: "Evidence of value in 1927 was not competent. Damages must be fixed as of the time the property was converted (1933). Especially must that be true here, when the court judicially knows that between 1927 and 1933 there had been a marked decline in real estate values, which continued up to the time of the trial of the action." See *Ohio Bell Tel. Co. v. Public Utilities Commission,* 301 U. S., 292.

And in *Olson v. United States,* 292 U. S., 246, the court of last resort made this pronouncement: "But the value to be ascertained does not include, and the owner is not entitled to compensation for any element resulting subsequently to or because of the taking. Considerations that may not reasonably be held to affect market value are excluded. Value to the taker of a piece of land combined with other parcels for public use is not the measure of or a guide to the compensation to which the owner is entitled."

We think the challenged evidence offered by the respondent was too remote in point of time. 22 C. J., 182. There is no evidence that the value of the property remained the same from the time it was taken in 1935 to the time it was examined by the witnesses in 1938 and 1939.

The respondent said there had been no change in the land, except the construction of the Scenic Highway (and some cleaning up), but this is far from saying there had been no change in its value. Indeed, one of respondent's own witnesses (Harrison Baker) testified that "he could not give an opinion as to the fair market value just before the Parkway was located, because he didn't know what road facilities the property then had, but the value he is now putting on it is the value after the Parkway went through and there was a good way to get to it." He further opined: "Market values fluctuate so much on real estate in this country. At one time it would have a market value that was pretty high during the war period, but since then it has not been so high until the last few years it has been advancing. Since the Blue Ridge Parkway has been built through here it has sort of picked up. Before that it was pretty dead at times and then again it was in the market."

The cases of *Powell v. R. R., supra,* and *Martin v. Ince,* 148 S. W. (Tex. App.), 1178, cited and relied upon by the respondent, are distinguishable by reason of different fact situations.

Having reached the conclusion that there was error in the admission of evidence as presented by the respondent, it is unnecessary to consider the exception addressed to the jury view. Mr. McIntosh in his valuable work on Procedure, page 618, summarizes the decisions on the subject as follows: "It is within the discretion of the court to allow the jury to view the premises involved in the controversy, but the practice is not commended." A jury view is usually had by consent of the parties rather than over the objection of one of them. See *Forbes v. United States,* 268 Fed., 273, and *Snyder v. Mass.,* 291 U. S., 97.

For the error in admitting incompetent evidence, the petitioner is entitled to another trial of the issue. It is so ordered.

New trial.

CLARKSON, J., not sitting.