Charles O. MARTIN, Raymond F. Farrar and wife, Hazel M. Farrar, and Floyd B. Martin, Appellants,

v.

UNITED STATES of America, Appellee.

No. 7261.

United States Court of Appeals Fourth Circuit.

Argued Oct. 16, 1956.

Decided Jan. 7, 1957.

D. Newton Farnell, Jr., and William E. Comer, Greensboro, N. C. (James MacClamroch, Greensboro, N. C., on brief), for appellants.

Richard C. Peet, Atty., Dept. of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., Edwin M. Stanley, U. S. Atty., Robert L. Gavin, Asst. U. S. Atty., Greensboro, N. C., and Roger P. Marquis, Atty., Dept. of Justice, Washington, D. C., on brief), for appellee.

Before PARKER, Chief Judge, and FAHY* and SOBELOFF, Circuit Judges.

PARKER, Chief Judge.

This is an appeal from a decree granting an injunction in an action instituted by the United States, as the owner of a limited-access highway, to restrain adjoining landowners from trespassing on a strip of land adjacent thereto in an attempt to build an access road onto the highway. The court below granted the injunction on the ground that the United States was the owner of the strip of land, having acquired it from the State of North Carolina, which, in turn, had acquired it from the predecessor in title of the defendant landowners. The case was tried on the pleadings and an agreed statement of facts; and the question presented by the appeal is whether the trial judge was correct in holding that the state acquired title to the strip of land in controversy by the mere filing of a map in the office of the Register of Deeds of the county where the land lies.

The facts are that the North Carolina State Highway and Public Works Commission, hereafter referred to as the Highway Commission, was desirous of turning over to the United States a section of a public highway of the state extending through the Guilford Courthouse National Military Park. As the United States required that it have fee simple title to a strip 100 feet wide for any road which it took over and maintained, the Highway Commission, on October 15, 1936, undertook to acquire such title by filing in the office of the Register of Deeds of the county where the road was situate a map showing land as being taken in fee simple for fifty feet on each side of the center of the existing highway; and on April 13, 1937, the State of North Carolina, acting through the Governor, executed and delivered to the United States a deed embracing the strip of land shown by the map. The original map, while filed in the office of the Regis-

ter of Deeds on October 15, 1936, was not recorded but was withdrawn from the office. A copy thereof was filed and recorded, however, on June 10, 1938. In the meantime the predecessor in title of defendants had, on March 1, 1938, executed and delivered to the Highway Commission a deed to a strip of land 20 feet wide south of the then existing highway, reserving, however, a right of access to the highway. This deed was not recorded and is not relied upon by the United States in support of its position.

It is stipulated that there was no actual staking off of the land in controversy or other physical evidence of taking possession thereof or entry thereon by the Highway Commission or by the United States prior to the execution of the deed from the State of North Carolina to the United States or prior to the filing and registration of either of the maps; and the trial judge states in his opinion that the defendants and those under whom they claim "had no actual knowledge that the United States had a deed in fee simple for the 100 foot strip of land until this litigation arose". It was the contention of the United States that no physical entry or evidence thereof was necessary to the acquisition of title but that same was acquired by the State of North Carolina by the mere filing and registration of the maps; and the trial judge so held. We do not think, however, that the mere registration of the maps was sufficient to divest the owner of title to his land.

It is true that, in ordinary cases where there has been an actual entry upon the land and the exercise of dominion pursuant to the statute authorizing the taking, the registration of a map showing the land taken pursuant to the statute will mark the time of the passage of the title; but we do not think that it was ever intended that the Highway Commission, already in possession of a traveled highway, could get title to adjacent lands by simply registering a map covering them, without exercising any rights of

---

* Sitting in the Fourth Circuit by designation of the Chief Justice.

dominion or possession and without notice to the owners.[1] As said by Mr. Justice Holmes in Ramapo Water Co. v. City of New York, 236 U.S. 579, 585, 35 S.Ct. 442, 59 L.Ed. 731, nothing but a specific decision of the highest court of the state would make us believe that such effect was to be accorded to the simple filing of a map. It is not necessary to decide whether, in the light of the due process clause, the mere filing of the map without any sort of notice could constitutionally be given such effect by statute:[2] for we do not think that the statute of North Carolina upon which the government relies was ever intended to have such effect. The statute relied upon is the Act of January 23, 1935, Public Laws of 1935, ch. 2, the pertinent portion of which is as follows:

" 'That the State Highway and Public Works Commission shall have the *same authority and under the same provisions of law hereinbefore provided for construction of State highways for the acquirement of all rights of way and easements* necessary to comply with the rules and regulations of the United States Government for the construction of Federal parkways in the State of North Carolina. That the right of way *acquired or appropriated* may, at the option of the Commission, be a fee simple title, and the nature and extent of the right of way and easements *so acquired or appropriated* shall be designated upon a map showing the location across each county, and, when adopted by the Commission, shall be filed with the Register of Deeds in each county, and, upon the filing of said map, such title shall vest in the State Highway and Public Works Commission. The said Commission is hereby authorized to convey such title so acquired to the United States Gov-

ernment, or its appropriate agency, free and clear of all claims for compensation. All compensation contracted to be paid or legally assessed shall be a valid claim against the State Highway and Public Works Commission, payable out of the Construction Fund of said Commission.' " (Italics supplied.)

It is to be noted that under this statute land is to be acquired for conveyance to the United States under the provisions of law then in effect with respect to the acquisition of land for state highways. It becomes necessary, therefore, to see what those provisions were. The Act of March 3, 1921, Public Laws of 1921, ch. 2, sec. 22, the act under which the construction of a state-wide system of hard surfaced highways was undertaken, provided for the acquisition of land for road purposes by "purchase, donation, or condemnation", with provision that, if condemnation should become necessary, the State Highway Commission was authorized "to enter the lands and take possession of the same * * * prior to bringing the proceeding for condemnation, and prior to the payment of the money for the said property". It was provided also that, if the owner should appeal from the report of the Commissioners in the condemnation proceeding, the Commission might proceed to use the property until the final termination of the proceeding without depositing the compensation fixed by the commissioners. The Consolidated Statutes of 1924, vol. 3, sec. 3846(bb), provided that when the Commission and the owner were not able to agree on the price of land required by the Commission, the Commission might proceed to condemn same following the procedure of the chapter of the General Statutes relating to eminent domain. Vol. 2a, ch. 40, sec. 40–11 et seq. See also the Act of March 22, 1933, c. 172,

---

1. That mere recording of a map does not constitute a taking, see 18 Am.Jur. 772, Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270; In re Philadelphia Parkway Opening, 295 Pa. 538, 145 A. 600, 64 A.L.R. 542 and note.

2. See North Laramie Land Co. v. Hoffman, 268 U.S. 276, 283, 45 S.Ct. 491, 69 L.Ed. 953; Burns v. Multnomah R. Co., C.C., 15 F. 177, 183.

vesting the State Highway and Public Works Commission with the powers of the old State Highway Commission.

Under the Act of 1935, therefore, the Commission was authorized to acquire the land in question only by purchase, donation or condemnation, with right to enter upon and use the lands pending condemnation. The statute did, indeed, provide for the filing of a map with provision that title should vest in the Commission upon such filing; but this must be construed along with the other language of the section which clearly contemplated that such filing should be in addition to and not in lieu of the existing procedures required for condemnation, its purpose being to facilitate conveyance to the United States of title properly acquired by "purchase, donation, or condemnation." That such entry upon the property as would amount to a taking by the government was contemplated as a prerequisite to a valid condemnation, even if the map were filed as provided by the statute, is shown by the requirement that actions to recover compensation for land taken must be brought within six months, if notice of the completion of the project has been posted at the court house door of the county and at the end of the project, otherwise within twelve months of the completion of the project. General Statutes 136–19. The completion of the project is, in ordinary cases, a clear taking of the owner's property and notice to him of the taking. This is not true, however, where the project consists of the mere paving of an existing public highway. Such paving, where the rights of the public are unquestioned, would be no assertion of rights over adjacent land or notice to the owners that such rights were being asserted.

We have given careful consideration to State Highway & Public Works Commission v. Hartley, 218 N.C. 438, 11 S.E. 2d 314; Yancey v. North Carolina State Highway Commission, 221 N.C. 185, 19 S.E.2d 489; Id., 222 N.C. 106, 22 S.E.2d 256. These cases, however, throw little light on the question here involved. They deal with the time as to which damages are to be computed where a taking is admitted. Here the question is whether there has been a taking. In Jennings v. State Highway Commission, 183 N.C. 68, 110 S.E. 583, it was held that no notice to the landowner is required that his land is being appropriated *provided* he is notified and given opportunity to be heard on the question of compensation that may be due. To the same effect is State v. Jones, 139 N.C. 613, 52 S.E. 240, 2 L.R.A.,N.S., 313. Here, however, the question is not one of notice of taking, but of "taking". In Penn v. Carolina Virginia Coastal Corp., 231 N.C. 481, 57 S.E.2d 817, 819, the Supreme Court of North Carolina, in holding that a taking of property had not been sufficiently alleged in an action to recover compensation for property alleged to have been taken pursuant to the North Carolina condemnation law, said:

" 'Taking' under the power of eminent domain may be defined as entering upon private property for more than a momentary period, and, under warrant or color of legal authority, devoting it to a public use, or otherwise informally appropriating or injuriously affecting it in such a way as substantially to oust the owner and deprive him of all beneficial enjoyment thereof". 18 Am.Jur. 756.

"Moreover, 'what is a taking of property within the due process clause of the Federal and State constitutions', the text writers say, 'is not always clear, but so far as general rules are permissible of declaration on the subject, it may be said that there is a taking when the act involves an actual interference with, or disturbance of property rights, resulting in injuries which are not merely consequential or incidental'. 18 Am.Jur. 757, Eminent Domain, Sec. 132."

While we do not think that rights in lands adjacent to the highway were acquired by the mere filing of the maps in 1936 and 1938, we do think that the filing of the maps was sufficient to vest title if accompanied by acts of dominion suffi-

cient to constitute taking possession of or assertion of dominion over such lands. The decree appealed from will accordingly be reversed and the case will be remanded to the District Court for further proceedings. If it can be shown that, in addition to the filing of the maps, the State of North Carolina or its grantee, the United States, exercised such dominion over the adjacent lands as to constitute a taking thereof or to fix the owner with notice that it was claiming right thereto under the map as filed, this we think would furnish a sufficient basis for a holding that title had been acquired and the government would be entitled to injunctive relief. If, however, no such showing is made, the granting of the injunctive relief to prevent access to a limited-access highway should be conditioned upon just compensation being made for the rights taken or upon proceedings being instituted for their condemnation. Lacy v. United States, 5 Cir., 216 F.2d 223.

Reversed and remanded for further proceedings.