FRANK G. TEMPLETON AND WIFE, EVELYN B. TEMPLETON, PETITIONERS,
v. STATE HIGHWAY COMMISSION, RESPONDENT.

(Filed 29 March, 1961.)

**1. Eminent Domain § 5—**

The measure of compensation for the taking of a part of a tract of land for highway purposes is the difference in the fair market value of the entire tract before the taking and the fair market value of that remaining immediately after the taking, ascertained by adding the fair market value of the land taken to any diminution in value of the remaining land, and subtracting any general and special benefits resulting to the remaining land.

**2. Eminent Domain § 6—**

In proceedings to assess compensation for the taking of a part of a tract of land, any evidence which aids the jury in fixing the fair market value of the land taken and the diminution in value of the remaining land is competent, but evidence having only a conjectural or speculative bearing upon this question is incompetent.

**3. Same—**

Where there is no evidence from which the jury could find the amount, if any, of mud and silt which flowed into petitioners' lake as the result of the taking of a part of petitioners' land for highway purposes, evidence in regard thereto is incompetent.

**4. Same—**

Where the taking of a part of petitioners' land for highway purposes results in the flow of mud and silt into petitioners' lake on their remaining lands, petitioners are entitled to recover any resulting diminution in value, but are not entitled to recover the costs of removing the mud and silt from the lake, and evidence of such costs is relevant only as a circumstance tending to show any diminution in value of the remaining land.

**5. Same—**

If mud and silt, adversely affecting fishing in petitioners' lake, flows into the lake as a result of respondent's taking a part of petitioners' land for highway purposes, petitioners are not entitled to recover loss of revenue from fishing as a separate item of damage but such loss may be considered only insofar as it affects the fair market value of the land remaining after the taking.

**6. Same—**

Where the record discloses that petitioners' witnesses considered the value of other property in the area in arriving at the value of petitioners' property, respondents are entitled to cross-examine the witnesses for the purpose of testing the witnesses' knowledge of values and for the purpose of impeachment.

**7. Evidence § 58—**

> The right to cross-examine a witness upon every phase of his examination-in-chief is an absolute right and not a mere privilege.

**8. Eminent Domain § 5—**

> In proceedings to assess compensation for the taking of a part of petitioners' land for highway purposes, respondent is entitled to have the testimony of his witnesses as to the increase in value of the land in the area, including petitioners' land, resulting from the construction of the highway, admitted upon the question of general and special benefits. G.S. 136-112.

APPEAL by respondent from *Farthing, J.,* October 10, 1960, Schedule B, Regular Civil Term, of MECKLENBURG.

On or about 29 May 1956, the State Highway Commission commenced the construction of projects 8.16522 and 8.16524 in Mecklenburg County for the purpose of making a link in Interstate Highway #85, or sometimes referred to as Highway #29 by-pass. Petitioners were the owners of three tracts of land, over which the respondent appropriated a right of way for the purpose of constructing said Interstate Highway #85. But it was stipulated by counsel that the land described in tract #1 be struck out. Respondent appropriated 13.4 acres of petitioners' property in connection with this project.

The parties were unable to agree as to compensation to be paid to the petitioner, and on 6 January, 1959, petitioners filed a petition against the State Highway Commission. Subsequently three commissioners were appointed and they filed a report of damages in the amount of $39,660.00. Thereafter the clerk confirmed the report. Thereupon the respondent appealed to the Superior Court.

The action came on for hearing and the verdict of the jury was that petitioners had been damaged in the sum of $38,200.00 with interest at the rate of six per cent from 29 May 1956. Respondent moved to set aside the verdict and for a new trial. To the overruling of these motions and the signing of the judgment respondent objects and excepts, and appeals to the Supreme Court and assigns error.

*Orr & Osborne for petitioners appellees.*

*Attorney General Bruton, Assistant Attorney General Harrison Lewis, Andrew H. McDaniel, Trial Attorney, McDougle, Ervin, Horack & Snepp for respondent appellant.*

WINBORNE, C.J. The purpose of this proceeding is the determination of compensation to be paid by the respondent to petitioners for the land taken in the construction of the portion of the highway described in the pleading.

The rule of law to be applied in this case is stated in *Proctor v. Highway Comm.*, 230 N.C. 687, 55 S.E. 2d 479, as follows: "Where only a part of a tract of land is appropriated by the State Highway & Public Works Commission for highway purposes, the measure of damages in such proceeding is the difference between the fair market value of the entire tract immediately before the taking and the fair market value of what is left immediately after the taking. The items going to make up this difference embrace compensation for the part taken and compensation for injury to the remaining portion, which is to be offset under the terms of the controlling statute by any general and special benefits resulting to the land owner from the utilization of the property taken for a highway."

See also *Highway Comm. v. Hartley*, 218 N.C. 438, 11 S.E. 2d 314; *Robinson v. Highway Comm.*, 249 N.C. 120, 105 S.E. 2d 287.

"Any evidence which aids the jury in fixing a fair market value of the land and its diminution by the burden put upon it is relevant and should be heard." *Gallimore v. Highway Comm.*, 241 N.C. 350, 85 S.E. 2d 392.

"The jury should take into consideration, in arriving at the fair market value of the land taken, all the capabilities of the property, and all the uses to which it could have been applied or for which it was adapted, which affected its value in the market at the time of the taking and not merely the condition it was in and the use to which it was then applied by the owner. But compensation should not exceed just compensation, and value should not exceed fair market value * * * ." *Barnes v. Highway Comm.*, 250 N.C. 378, 109 S.E. 2d 219.

Considerations that may not reasonably be held to aid the jury in determining the "fair market value of what is left immediately after the taking" without resort to conjecture and speculation should be excluded.

I. In this connection the respondent first assigns as error the admission of testimony as to an estimate of the cubic yardage of mud that had flowed into a lake on petitioners' land and the cost per cubic yard of removing the mud.

Upon due consideration the conclusion is that respondent's exception is well taken and that the evidence of the mud and cost of removing it from the lake is not evidence which would aid the jury in fixing the fair market value after the taking.

The petitioner's testimony was not limited to an estimate of how much mud the respondent may have caused to flow into the lake, but he was permitted to testify to the total amount of mud in the lake. Furthermore, he was permitted to testify as to the cost of removing the mud from the lake without regard to the amount of mud which

may have been there because of the respondent's action. Indeed, petitioner testified that mud had flowed into the lake on previous occasions and that silting went on in the lake under any condition. In short, there is no evidence in the record from which the jury could find the amount, if any, of mud and silt in the lake which was caused by the respondent, or that the mud affected the fair market value of the remaining property after the taking.

It is also possible that the jury could have gotten the impression from this testimony that the removal of the silt and mud from the lake was compensable as a separate item of damage. "Such adverse effects are not separate items of damage, recoverable as such, but are relevant only as a circumstance tending to show a diminution in the overall fair market value of the property." *Gallimore v. Highway Comm., supra.*

II. Indeed in the next assignment of error it is apparent that the witnesses Trotter, Masten and Barrett, whose testimony is the subject of exception, gave the impression that the removal of the silt and mud from the lake was compensable as a separate item of damages. For instance, the witness Trotter testified in respect to this question, "What you did, you didn't really make an estimate of its value after the taking, but you took certain damages and subtracted them from your before figure to arrive at your after figure?", said "That is correct."

It is also evident from the record that these witnesses just named considered the loss of revenue from fishing as a separate item of damage without taking into account what affect, if any, this had on the fair market value of the land after the taking. The correct rule is stated hereinabove. See *Proctor v. Highway Comm., supra; State Highway v. Hartley, supra,* and *State Highway v. Black,* 239 N.C. 198, 79 S.E. 2d 778.

III. The next assignment of error relates to the respondent's right of cross-examination to test petitioner and petitioner's witnesses' knowledge and basis of values. The better rule, we think, is stated by *Moore, J.,* in *Barnes v. Highway Comm., supra,* at 394, "The majority rule is that an expert witness may be questioned on cross-examination with respect to the sales prices of nearby property to test his knowledge of values and for the purpose of impeachment, but not for the purpose of fixing value. This is especially true if the witness used such sales as a basis for his appraisal of the property taken, or if he had actually appraised the property sold (citations omitted) * * *. It would seem that utmost freedom of cross-examination with reference to sales and sales prices in the vicinity should be accorded the (re-

spondent) subject to the right and duty of the presiding judge to exercise his sound discretion in controlling the nature and scope of the cross-examination in the interest of justice and in confining the testimony within the rules of competency, relevancy and materiality."

The petitioner and his witnesses testified on direct examination to the effect that they were familiar with petitioners' property and with the market values of lands in the area, and that they considered the value of other property in the area in arriving at the value of petitioners' property. Applying these facts to the principle of law stated above, the conclusion is that the lower court erred in denying the respondent the right to cross-examine the petitioner and petitioners' witnesses for the limited purpose stated above. "The right to have an opportunity for a fair and full cross-examination of a witness upon every phase of his examination-in-chief, is an absolute right and not a mere privilege." *Milling Co. v. Highway Comm.*, 190 N.C. 692, 130 S.E. 724.

The respondent next contends that the court below committed error in not admitting evidence of general and special benefits accruing to the petitioners' remaining property.

G.S. 136-112 provides that in all instances where a portion of a tract of land is taken for highway purposes the general and special benefits shall be assessed as offsets against damages.

"The most satisfactory distinction between general and special benefits is that general benefits are those which arise from the fulfillment of the public object which justified the taking, and special benefits are those which arise from the peculiar relation of the land in question to the public improvement. Ordinarily the foregoing test is a satisfactory one, though sometimes difficult to apply. In other words, the general benefits are those which result from the enjoyment of the facilities provided by the new public work and from the increased general prosperity resulting from such enjoyment. The special benefits are ordinarily merely incidental and may result from physical changes in the land, from proximity to desireable object, or in various other ways." Nichols Eminent Domain, 3rd Ed., Vol. 3, Sec. 8.6203.

Respondent's witness Todd was not permitted to give an opinion as to whether the construction of the highway had raised or lowered property values along the highway. His answer would have been that the highway greatly increased the property values of all the property along the highway. Respondent's witness Rhyne was not permitted to state his opinion as to the value of the land along the highway after its construction. His answer would have been that the highway had increased the value of the land all along the highway, and that the petitioners' property had tripled in value since the highway was con-

structed because the petitioner now had approximately 3,000 feet of paved road frontage, whereas before he had none on that particular tract.

The jury should have been allowed to hear this testimony in determining what general and special benefits, if any, the petitioners received.

For reasons stated there should be a new trial, and it is so ordered.

New trial.