D. C. KIRKMAN, AND WIFE, LELA M. KIRKMAN, v.
STATE HIGHWAY COMMISSION.

(Filed 15 June 1962.)

**1. Eminent Domain § 5—**

    While loss of profits or injury to a going business are not elements of compensation which may be recovered in eminent domain proceedings, where the taking of an abutting landowner's access to a highway results in a loss of business which in turn renders the land less valuable, the diminution in value of the land itself is a proper element of compensation.

**2. Same—**

The highest and most profitable use for which property is adaptable is one of the factors properly considered in arriving at the market value.

**3. Same—**

While special and general benefits accruing to the remainder of petitioner's land are to be considered as an offset in determining the amount of damages sustained by petitioner in the taking of a part of his tract of land, the burden is on condemnor to prove the existence of such special and general benefits as actual and appreciable and not merely conjectural or hypothetical. Further, such benefits having once been allowed in a previous proceeding cannot be again allowed in a subsequent one.

**4. Same—**

The evidence disclosed that petitioner had theretofore conveyed a right of way for highway purposes, reserving access points to the highway from its remaining lands. Petitioner instituted this proceeding to recover compensation for the later taking of his access. Under the facts it *is held* that the failure of the court to submit the question of special and general benefits was not error, since special and general benefits had already been taken into account in ascertaining compensation for the conveyance of the right of way, and since it is evident that no appreciable benefit resulted to petitioner's remaining land from the mere fact that his access to the highway had been closed.

**5. Trial § 35—**

An excerpt from the charge lifted out of context will not be held for error as containing an expression of opinion by the court upon the evidence when it is apparent in construing the charge contextually that the court was merely stating a contention of a party and was not expressing an opinion upon the evidence.

APPEAL by respondent from *Phillips, J.*, October 23, 1961 Civil Term of FORSYTH.

In January, 1953 petitioners owned a tract of land just outside the city limits of Kernersville and situated about twelve miles east of Winston-Salem and eighteen miles west of Greensboro. The Greensboro Airport is about seven miles east. The north side of the lot fronted on U. S. Highway No. 421, which will hereinafter be called "Old 421". This highway goes from Greensboro to Winston-Salem through the center of Kernersville. In January, 1953 petitioners sold to the State Highway Commission a right of way across this property for new 421 which was to be located a short distance south of old 421. Thereafter, between these two highways, petitioners owned a lot containing approximately three acres which fronted about 700 feet on old 421 and 644.93 feet on new 421. The lot had a depth of about 300 feet on the west and about 100 feet on the east end. Petitioners also owned an unspecified amount of land on the south side of new 421. When petitioners sold the right of way for new 421, they retained a specifi-

cally located point of access to new 421 on both the north and south side of that highway. New 421 was opened to traffic in 1953.

On August 6, 1950, the petitioners conveyed to the respondent a right of way for Project No. 5346 known as Interstate Highway No. 40. In this transaction petitioners sold respondent all the land they had left on the south side of new 421 including the right of access to that highway from the south. However, they retained the access point and right of access to new 421 on the north side. Thereafter the respondent converted this section of new 421 into a ramp connecting Interstate Highway No. 40 with U. S. Highway No. 421.

In 1956 on the lot between old and new 421 the petitioners built twelve units of an L-shaped motel, at the same time installing facilities for eight additional units to be built later. This motel, known as the Pony Motel, faced new 421. It opened for business on June 1, 1956, and petitioners operated it continuously after it was opened. The driveway into the motel was constructed at the point where access to new 421 had been reserved. At the same time a restaurant which faced north on the lot was remodeled, and a side entrance was added on the east so that it faced the motel. On August 15, 1958, the respondent took the access point which petitioners had reserved and placed a barricade across it, thereby completely eliminating access to the motel from new 421. Several months prior to the taking the State Highway Commission had made new 421 one-way for traffic going west, and at the time the barricade was put up, traffic going east to Greensboro did not have access to the motel at the reserved point.

To get to the motel since the entrance from new 421 has been barricaded, west-bound traffic, after passing the barricade, has to travel about 1500 feet to the clover-leaf intersection with State Highway No. 66, go under the overpass (Highway No. 66), take the ramp onto No. 66 and then go about 1200 feet northerly to the intersection of No. 66 with old 421 at the edge of Kernersville, turn sharply to the right, and then go east on old 421 to the motel. This route is well over one-half a mile.

If a person traveling west on new 421 from the Greensboro Airport knew where the motel was, and was familiar with the roads, he could turn right off of new 421 at the Pilgrim Bible College into old 421 and go about 1700 feet to the motel. North Carolina Highway No. 66 is the road between Kernersville and High Point and it crosses Interstate 40 and new 421 on an overpass about three-tenths of a mile west of the Pony Motel. Passengers on No. 40 cannot see the entrance to the motel.

To get to the motel a motorist going east towards Greensboro would go under the bridge (Highway No. 66) and out on the east-

bound lane of new 421 to the Bible College, make a sharp left turn and go back along old 421. The traveler going east who knew the motel was ahead could get off new 421 at the clover-leaf intersection with No. 66 west of the motel, go north on No. 66 to old 421, turn right and go into the back of the motel. However, this was the situation facing travelers going east prior to the taking of the access.

Petitioners instituted this action to recover just compensation for the taking of the access point and for damage caused the remainder of their property by reason of the taking. Respondent concedes that it has permanently terminated the petitioners' direct access to new 421 which had theretofore been reserved and granted and that in closing the access it had actually taken 2,232 square feet of ground not previously acquired. Respondent did not resist petitioners' prayer that just compensation be determined as set forth in Article 2 of Chapter 40 of the General Statutes and in G.S. 136-19, but prayed that "benefits both general and special be assessed as offsets against the damages, if any, as provided therein."

Commissioners were duly appointed and, from the judgment of the clerk affirming their report, all parties appealed to the Superior Court. On the trial petitioners offered evidence tending to show that the value of the motel property after the access point had been taken was from $14,500.00 to $40,000.00 less than it had been before. Two witnesses for the respondent testified that in their opinion the diminution in value was $221.00; one witness said $350.00. These witnesses did not place any value on the loss of access but valued the square feet taken at ten and fifteen cents a square foot. One witness for the respondent estimated that the property had been damaged twenty per cent or $2,000.00. The jury assessed damages of $24,000.00, and from judgment on the verdict the State Highway Commission appealed, assigning three errors.

*W. P. Sandridge; Charles F. Vance, Jr.; and Wade M. Gallant, Jr., for petitioner appellees; Womble, Carlyle, Sandridge and Rice of Counsel.*

*Attorney General Bruton, Assistant Attorney General Lewis, James F. Bullock, Ray Brady and Blackwell, Blackwell, Canady and Eller for respondent appellant.*

SHARP, J.   Respondent's first assignment of error is to the failure of the trial judge to strike the evidence of Dr. O. L. Joyner, witness for the petitioners, who testified that in his opinion the property in question was worth $80,000.00 before the access to new 421 was taken and only $45,000.00 to $50,000.00 thereafter. On cross-examination he said

that in arriving at his valuations he had taken into consideration the fact that the property was less valuable for motel and restaurant purposes after access had been lost to the new highway because the barricade resulted in a loss of business. Neither Dr. Joyner nor any other witness attempted to measure the loss of business in percentage or in money.

Loss of profits or injury to a growing business conducted on property or connected therewith are not elements of recoverable damages in an award for the taking under the power of eminent domain. *Pemberton v. Greensboro*, 208 N.C. 466, 181 S.E. 258. However, when the taking renders the remaining land unfit or less valuable for any use to which it is adapted, that fact is a proper item to be considered in determining whether the taking has diminished the value of the land itself. If it is found to do so, the diminution is a proper item for inclusion in the award. The condemner is not required to pay compensation for a loss of business but only for the diminished value of land which results from the taking. When rental property is condemned the owner may not recover for lost rents, but rental value of property is competent upon the question of the fair market value of the property at the time of the taking. *Palmer v. Highway Commission*, 195 N.C. 1, 141 S.E. 338.

Respondent's appraisers conceded that in the operation of a motel and restaurant, petitioners were making the highest and best use of their property at the time the access point was taken. The highest and most profitable use for which property is adaptable is one of the factors properly considered in arriving at its market value. *Williams v. Highway Commission*, 252 N.C. 514, 114 S.E. 2d 340. Dr. Joyner's testimony, to which objection is made, was that in arriving at the valuation of the property after the taking he had considered the obvious fact that it was not as valuable motel and restaurant property as it had been before. In other words, its highest and best use had been damaged. The first assignment of error is not sustained.

Respondent's second assignment of error is to the failure of the judge to charge the jury that any damages sustained by the petitioners should be offset by general and special benefits. On August 15, 1958, the time of the taking of respondent's access to new 421, G.S. 136-19 provided that when the State Highway Commission condemned land ". . . in all instances the general and special benefits shall be offset against damages."

It is firmly established in this State "Where only a part of a tract of land is appropriated by the State Highway and Public Works Commission for highway purposes, the measure of damages in such proceeding is the difference between the fair market value of the entire tract

immediately before the taking and the fair market value of what is left immediately after the taking. The items going to make up this difference embrace compensation for the part taken and compensation for injury to the remaining portion *which is to be offset under the terms of the controlling statute by any general and special benefits resulting to the landowner from the utilization of the property taken for a highway"*. (Emphasis added) *Proctor v. Highway Commission*, 230 N.C. 687, 691, 55 S.E. 2d 479. This rule has been approved many times: *Highway Commission v. Black*, 239 N.C. 198, 79 S.E. 2d 778; *Robinson v. Highway Commission*, 249 N.C. 120, 105 S.E. 2d 287; *Williams v. Highway Commission, supra; Templeton v. Highway Commission*, 254 N.C. 337, 118 S.E. 2d 918.

The respondent apparently contends that this rule is a fixed formula which the trial judge is required to give in any condemnation proceeding to which the State Highway Commission is a party, and that the omission of the trial judge to charge the italicized lines in the instant case constituted reversible error.

In each of the cited cases respondent had condemned a right of way *for the construction of a highway* across the owner's property and, as the law required, the judge gave "the formula". In the instant case, however, the property taken was not for the construction of a highway; it was the respondent's access point and right of access to a highway which had already been constructed.

Whether benefits are general or special, "it is generally agreed that only those benefits can be taken into consideration which arise from the particular improvement for the purpose of which the owner's land is taken or damaged and not those which have no causal connection with such improvements but are derived from other previous or subsequent improvements, even though made by the condemner. . ." Anno. — Eminent Domain — Deduction of Benefits, 145 A.L.R. 110. In the negotiations in which petitioners conveyed to respondent the rights of way for new 421 and Interstate 40, the parties had already taken into consideration the question of general and special benefits from the construction of both highways. "A benefit once allowed cannot be reasserted in a further proceeding to condemn." C. F. Randolph, *The Law of Eminent Domain*, Section 268.

Special benefits are defined as "those which arise from the peculiar relation of the land in question to the public improvement", *Templeton v. Highway Commission, supra.* Tested by this definition it is obvious that no special benefit arose from the peculiar relation of the Pony Motel property to the barricaded access to new 421. In his paper entitled "Compensable Damages Due to Construction of Limited Access Highways," delivered at the Second Annual Institute on Eminent

Domain, held at the Southwestern Legal Center in Dallas, Texas, in 1960, Alfred C. Jahr, author of *Eminent Domains Valuation and Procedure*, said: "We can see no special benefits peculiar to the remainder of the property when access to the new highway is specifically excluded from the abutting property", page 85 of the *Proceedings*.

General benefits are defined as "those which arise from the fulfillment of the public object which justified the taking. . . . general benefits are those which resulted from the enjoyment of the facilities provided by the new public work and from the increased general prosperity resulting from such employment", *Templeton v. Highway Commission, supra.* Presumably the public object in barricading the access was to increase highway safety by the elimination of traffic entering new 421 from the motel. Conceding that the elimination of this access did remove one more traffic hazard on new 421, it is impossible to say that it benefited the community to such an extent that it had any effect on property values in the community. "Of course, any alleged benefit to have any standing in court at all, must be genuine and capable of estimation in money value." 18 Am. Jur. Eminent Domain, Section 297. "They must be actual and appreciable and not merely conjectural and they must be the direct and proximate result of the improvement, remote benefits not being taken into consideration," 29 C.J.S., Eminent Domain, Section 183. "Whether benefits are special or general, the courts are agreed on the proposition that remote, uncertain, contingent, imaginary, speculative, conjectural, chimerical, mythical or hypothetical benefits cannot, under any circumstances, be taken into consideration." Anno. — Eminent Domain — Deduction of Benefits, 145 A.L.R. 124. *Statesville v. Anderson*, 245 N.C. 208, 95 S.E. 2d 591.

The burden of proving the existence and the amount of benefits is on the condemner. 29 C.J.S., Eminent Domain, Section 184. It would have been error for the Court to charge upon general and special benefits as an abstract principle of law which was not presented by the evidence in the case. *Carswell v. Lackey*, 253 N.C. 387, 117 S.E. 2d 51. Indeed, had the judge charged the jury that they could offset petitioners' recovery by the value of general and special benefits, when they had previously heard no evidence of such benefits, confusion would have been the only result. Assignment No. Two is without merit.

As its third assignment of error, respondent asserts that the trial judge expressed an opinion to the jury that they should compensate the petitioners in "a substantial amount". For this assignment respondent lifted out of context a part of a sentence.

The Court, while stating the contentions of the petitioners that they were entitled to recover a substantial sum because this was the only time they could ask for damages, inserted parenthetically the following:

"—and the Court charges you this is the only time they can recover; this is the only time that they can ask to be compensated for any injury to this land now—". He then resumed his statement of petitioners' contentions by saying: "—and that you should compensate them in a fair and reasonable amount, which should be a substantial amount, because according to all the evidence he has a substantial investment there which has been permanently damaged". When stating the law the Court used the present tense; when he resumed his statement of petitioners' contentions he returned to the subjunctive. Immediately thereafter, in his next sentence, the judge began to state the respondent's contention by saying: "Now the respondent, on the other hand, insists and contends that . . ."

The sentence which ended the statement of petitioners' contentions was a long one but, when construed as a whole, it is apparent that the judge was merely stating a contention of the petitioners and not expressing an opinion.

We fail to find anything in this record which indicates that the respondent did not have a fair trial.

No error.