DEPARTMENT OF TRANSPORTATION, PLAINTIFF v. OSCAR GENE COLEMAN, III AND WIFE, VICTORIA A. COLEMAN, DEFENDANTS

No. COA96-1233

(Filed 2 September 1997)

**Evidence and Witnesses § 572 (NCI4th)— property condemnation—damages—duty to mitigate—activities of property owners—admissible**

In an action to determine compensation for property condemned by the Department of Transportation, the trial court properly allowed evidence of defendant property owners' transactions and activities prior to the condemnation date. Evidence that defendants engaged in conduct for the sole purpose of increasing their damages was relevant and admissible under N.C.G.S. § 8C-1, Rule 404(b); furthermore, defendants' duty to mitigate included the avoidance of conduct which would increase their damages.

Judge GREENE dissenting.

Appeal by defendants from judgment dated 15 May 1996 by Judge James C. Davis in Cabarrus County Superior Court. Heard in the Court of Appeals 1 May 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General W. Richard Moore, for plaintiff-appellee.*

*Wesley B. Grant, P.A., by Wesley B. Grant for defendants-appellants*

DEPT. OF TRANSPORTATION v. COLEMAN

[127 N.C. App. 342 (1997)]

WYNN, Judge.

This appeal arises from a proceeding initiated by the Department of Transportation (DOT) to condemn for highway purposes 0.22 acres of a 1.01 acre tract of land owned by Oscar Gene Coleman, III and Victoria A. Coleman. The Colemans, apparently dissatisfied by a jury award of $39,417.50 for just compensation, allege on appeal that the trial court erred by allowing evidence that tended to show that the Colemans made improvements on the tract to enhance their condemnation damages. We find no error.

On 5 February 1993, the Colemans purchased for $35,000 the 1.01 acre tract. About two and a half months later, on 26 April 1993, DOT, through its agent, Wade McSwain, contacted the Colemans. McSwain stated that he told the Colemans "how close [the right of way] would come to [their] house" and that he would "order [an] appraisal [of the property but] could not discuss any monetary damages . . . [and] would get back with them later . . . with an offer." He also showed them the "actual highway plans" which showed that 0.22 acres facing the road of the Coleman tract (approximately fifty feet) would be needed for the highway project.

At the time McSwain contacted the Colemans, a vacant rental house, apparently in need of extensive repair, sat upon the 1.01 acre tract of land. Although the house was not within the area to be acquired by DOT, the only septic tank system on the Coleman tract was located on the portion of land that DOT sought to acquire. On 9 August 1993, DOT first appraised the Colemans' tract. On 11 August 1993, DOT also obtained an assessment that revealed that the remaining .79 acres of the parcel could not sustain a replacement septic system for the rental house.

On 24 September 1993, the Colemans purchased 2.29 acres of property adjoining the rear of their 1.01 acre tract. On learning of this acquisition, in early November 1993, McSwain told the Colemans that their property would need to be appraised again to include this additional lot and to determine if a replacement septic system might be installed somewhere on the 2.29 acres. In response, Mr. Coleman then told McSwain "that he was going to take the property" and "sell it and have it deeded—it would be out of . . . his name, that he had no intention of keeping it, and that would be done immediately." A few days later, the Colemans transferred the property to Mr. Coleman's parents by a deed dated 11 November 1993.

[127 N.C. App. 342 (1997)]

Sometime after the August 1993 appraisal and assessment, but prior to the date (28 June 1994) of the condemnation of the property, the Colemans made extensive renovations to the rental house on the Coleman tract at a cost of approximately $35,000 including: adding a second bathroom, installing a new heating and cooling system, new roof, and deck. Under the Federal Highway Regulations, DOT made an offer to purchase the property. However, the Colemans did not accept this offer apparently because it was based on the DOT's initial appraisal of the property in August 1993 which did not include the renovations.

On 28 June 1994, DOT filed a condemnation action as to the 0.22 acres and deposited $31,900.00 with the Cabarrus County Clerk of Superior Court for the taking of the property and for any damages to the remaining house and property. The Colemans answered denying the sufficiency of this amount and requested a jury trial.

Before trial, the Colemans made a motion in limine to exclude "evidence of access or lack of access to adjacent property, for maintenance of a septic tank . . . to service the subject property[,] . . . the identity of adjoining property owners, . . . [and] evidence of the [Colemans'] motives in improving the [Coleman tract] before the date of the taking" on the grounds that the evidence is irrelevant and thus inadmissible. The trial court denied the motion in limine. At trial, the Colemans renewed their objections to the introduction of this evidence by objecting to the admission of evidence regarding whether a replacement septic tank could be placed on the adjacent property to service the Coleman tract and evidence of the Colemans' motives in improving the Coleman tract before the date of the taking. The trial court overruled the objections.

Consistent with this evidence, the trial court instructed the jury that the Colemans had a duty "to minimize the damages by taking all reasonable precautions which would avert or diminish the injuries to the remaining area [and] to exercise such care in preventing injury to the property as may be reasonably expected of a person of ordinary prudence under like circumstances." The trial court further instructed the jury that if it found that the Colemans had breached this duty "and injury to their property . . . occurring, then the Department would not be responsible for that loss." The trial judge then instructed the jury that "[i]n this case there was some evidence . . . that the landowners owned some other property adjacent to that which is the subject of this action . . . available to them for the [place-

ment of] a septic tank . . . which they chose to convey to others" which they could consider in the "determination of whether or not any damages were caused by the property owners themselves."

The Colemans contend that evidence of a property owner's transactions and activities, prior to the date of a Chapter 136 condemnation, related to the condemned property is irrelevant and therefore inadmissible in a trial to determine the amount of just compensation. We disagree.

Evidence that the Colemans engaged in some conduct for the sole purpose of increasing their damages in this condemnation proceeding is relevant and admissible under N.C. Gen. Stat. § 8C-1, Rule 404(b) (1996) to prove the "motive" or intent of the owners in making the improvements to their property. Evidence that the renovations by the Colemans were made in bad faith and for the purpose of enhancing their damages is relevant and competent evidence for a jury to consider in the determination of the value of property at the time of the taking. *See generally State ex rel. Herman v. Schaffer*, 515 P.2d 593 (Ariz. 1973) (noting that landowner may not recover value of improvements placed on land after knowledge of impending condemnation where improvements are made in bad faith). The jury in this case, heard all the evidence, evaluated the respective contentions of the parties, and apparently concluded that the Colemans made improvements on the subject property to increase their damages.

Furthermore, we believe that the duty of the Colemans to mitigate their damages included the avoidance of conduct which would increase their damages. *See* 26 Am. Jur. 2d *Eminent Domain* § 140 (1996). To hold otherwise simply encourages parties in the position of the Colemans to engage in conduct which will increase their damages rather than mitigate them. Therefore, we conclude that Judge Davis correctly instructed the jury regarding the property owners' obligation to "minimize the damages."

Accordingly, with this jury's verdict, we find,

No error.

Judge TIMMONS-GOODSON concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I do not agree that evidence of a property owner's transactions and activities, prior to the date of a Chapter 136 condemnation, is admissible to determine the amount of just compensation. I would award the plaintiffs a new trial.

The damages in a Chapter 136 condemnation proceeding are to be determined as of the date of the taking. N.C.G.S. § 136-112 (1993). The taking occurs on the date Department of Transportation (DOT) files a civil action and declaration of taking. N.C.G.S. § 136-103 (1997).

> Where only a part of a tract [of land] is taken, the measure of damages . . . shall be the difference between the fair market value of the entire tract immediately prior to said taking and the fair market value of the remainder immediately after said taking with consideration being given to any special or general benefits resulting from the utilization of the part taken for highway purposes.

N.C.G.S. § 136-112(1). If the entire tract of land is taken, the measure of damages "shall be the fair market value of the property at the time of taking." N.C.G.S. § 136-112(2). The fair market value of the property is to be determined "on the basis of conditions existing at the time of the taking," *City of Charlotte v. Recreation Comm'n*, 278 N.C. 26, 33, 178 S.E.2d 601, 606 (1971), and evidence of actions taken by either DOT or the property owners in anticipation of the condemnation is not admissible. *North Carolina State Highway Comm'n v. Hettiger*, 271 N.C. 152, 156, 155 S.E.2d 469, 472-73 (1967); *Templeton v. State Highway Comm'n*, 254 N.C. 337, 339, 118 S.E.2d 918, 920-21 (1961) (only evidence relevant to the fair market value on the date of the taking is admissible); James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 19-1, at 805 (Patrick K. Hetrick & James B. McLaughlin, Jr., eds., 4th ed. 1994) (property owner free to exercise normal rights incidental to ownership prior to actual declaration of taking).

In this case the evidence relating to the Colemans' purchase and subsequent transfer of an adjoining tract of land and the motives of the Colemans in making renovations to the house were inadmissible. Although it may tend to show (as DOT argues) that the Colemans engaged in some conduct for the sole purpose of increasing their damages in this condemnation proceeding, the evidence is not rele-

vant to the determination of the fair market value of the property on the date of the taking.[1] It follows that the trial court also erred in instructing the jury to consider this evidence in assessing the damages. For the same reasons the instructions regarding the property owners' obligation to "minimize the damages" was error.

---

1. I do not address, as it is not presented in this appeal, whether evidence of a property owner's transactions after receiving written notice of a public condemnor's "intent to institute an action to condemn property," filed pursuant to N.C. Gen. Stat. § 40A-40 (1984), and before the filing of the complaint and declaration of taking, as is required under section 40A-41, would be admissible. I do note that the condemnation procedure for DOT (N.C.G.S. § 136-103) does not require any written notice of condemnation prior to the filing of the declaration of taking. *See* James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 19-3, at 818 (referring to a Chapter 136 condemnation as a "quick take" condemnation).